203 N.J. Super. 365 (1985)
497 A.2d 204
RICHARD SIMON, TRUSTEE, PLAINTIFF,
v.
OLDMANS TOWNSHIP, JOHN D. JORDAN AND DOUGLAS M. VASS, SR., DEFENDANTS.
Superior Court of New Jersey, Chancery Division Salem County.
Decided January 22, 1985.
*369 Michael M. Land for plaintiff.
Keith G. VonGlahn for defendants (Wilson, Elser, Moskowitz, Edelman & Dicker, attorneys).
EDWARD S. MILLER, J.S.C.
Plaintiff in this action seeks rescission of the purchase of certain tax sale certificates and restitution of the purchase price. This matter is before the court on cross-motions by plaintiff and defendants. On the return date of the motions, the court rendered an oral decision which is embodied in this written opinion.
The facts are as follows. On September 15, 1984, defendant Oldmans Township conducted a public tax sale of premises known as Block 37, Lot 2 and Block 39, Lots 17 and 21 which were owned by National Smelting of New Jersey, Inc. Although National Smelting is in bankruptcy, the automatic stay of the bankruptcy court had been lifted, making the tax sale possible. Plaintiff, through his representatives, was the only bidder for the three tax sale certificates. Plaintiff paid a total of $61,751.56 for the three certificates.
Subsequently, plaintiff learned of environmental problems associated with the property in question. As a result of these problems, plaintiff was informed that the State of New Jersey was asserting a "super lien" for the clean-up of toxic wastes on the property, pursuant to N.J.S.A. 58:10-23.11f(f).
In addition, plaintiff learned that an appeal of the decision to vacate the automatic stay of the bankruptcy court is pending, which would prevent plaintiff from foreclosing on the tax sale certificates.
Plaintiff alleges that the township solicitor for Oldmans Township, who is named as a defendant, withheld information *370 and misrepresented the facts surrounding the subject property during the public tax sale. Accordingly, plaintiff seeks rescission of the tax sale certificates and restitution of the monies paid by plaintiff. Plaintiff also seeks compensatory and punitive damages against defendants, Oldmans Township, the township solicitor and the township tax collector, individually, jointly, severally, and in the alternative.
On November 14, 1984, plaintiff sought an order to show cause with temporary restraints to have the funds paid by plaintiff removed from Oldmans Township's general account. The court denied any restraints and entered an order to show cause why the relief sought by plaintiff should not be granted, returnable November 30, 1984.
On December 20, 1984, the adjourned return date of the order to show cause, defendants moved to dismiss the complaint pursuant to N.J.S.A. 59:1-1 et seq., the New Jersey Tort Claims Act. The court conferenced the matter and entered a management order. Defendants were ordered to file an answer within two weeks. Both parties were ordered to file a motion for summary judgment with a brief addressed specifically to the question of applicability of the Tort Claims Act. The return date of these motions was set for January 22, 1985.
On January 22, 1985, plaintiff moved for summary judgment against defendants for the relief sought in its complaint and for counsel fees and costs. In the alternative, plaintiff moved for an order permitting the late filing of a New Jersey tort claims notice pursuant to N.J.S.A. 59:8-9. Defendants moved for summary judgment and for an order denying plaintiff's motions.
The court will first address the issue of the applicability of the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq., to this action. Defendants argue that the Tort Claims Act is applicable to this action because a public entity and public employees are being sued. Defendants attempt to characterize the conduct complained of as "sounding in negligence."
*371 While the court would agree that it is often difficult to define what constitutes a "tort," the court does not agree that this cause of action falls within the purview of the Tort Claims Act. This action is for rescission and restitution. Rescission is defined as "an action of an equitable nature in which a party seeks to be relieved of his obligation under a contract." Black's Law Dictionary (5 ed. 1979) at 1174-1175. It, therefore, is an action based on the equitable powers of the Chancery Division.
Turning to the statute, it is clear that an equitable action for rescission is not subject to the Tort Claims Act. Section 1-4 of the statute states:
Nothing in this act shall affect liability based on contract or the rights to obtain relief other than damages against the public entity or one of its employees. [N.J.S.A. 59:1-4; emphasis supplied]
This language specifically excludes this action from the Tort Claims Act. See also Blazer Corp. v. N.J. Sports & Exposition Authority, 195 N.J. Super. 542, 549 (Law Div. 1984) (Tort Claims Act not applicable to contract cases or cases in which purely equitable relief is sought); Lloyd v. Stone Harbor, 179 N.J. Super. 496, 512 (Ch.Div. 1981) (employment discrimination claim for reinstatement not subject to notice requirements of Tort Claims Act). Thus, plaintiff is not required to file a notice of claim under the Tort Claims Act.
This finding, however, does not complete the analysis. In addition to the provision covering tort claims, Title 59 also contains provisions on contractual liability. N.J.S.A. 59:13-1 et seq. A notice of claim is also required under this part of Title 59. N.J.S.A. 59:13-5.
While this action for recission is based on contract, the court finds that the provisions of N.J.S.A. 59:13-1 et seq. are not applicable. This action is against a municipality and its employees. It is clear from the definitional section, N.J.S.A. 59:13-2, that the act only applies to the State of New Jersey and the various offices and departments of the State. Cf. N.J.S.A. *372 59:1-3 (for the purposes of the Tort Claim Act, public entity "includes the state, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State."). Consequently, plaintiff is also not required to file a notice of claim pursuant to N.J.S.A. 59:13-5.
Plaintiff contends that he is entitled to summary judgment because of undisclosed information concerning the condition of the subject premises and the possibility of a "super lien" pursuant to N.J.S.A. 58:10-23.11f(f). Before addressing the basis for plaintiff's argument, it is first necessary to establish the necessary legal framework.
Responding to the environmental threat imposed by the discharge of hazardous substances throughout the State, the New Jersey Legislature passed the Spill Compensation and Control Act. N.J.S.A. 58:10-23.11 et seq. The act establishes a Spill Compensation Fund, N.J.S.A. 58:10-23.11i, and authorizes the administrator of the fund to utilize the monies available to pay for clean up and removal costs in the event of a discharge of a hazardous substance. N.J.S.A. 58:10-23.11f(c). The act further provides that any person who has discharged a hazardous substance removed by the New Jersey Department of Environmental Protection "shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs." N.J.S.A. 58:10-23.11g(c).
The section of the Spill Compensation and Control Act which is of the most relevance to this action is section 23.11f(f) which states:
f. Any expenditures made by the administrator pursuant to this act shall constitute a first priority claim and lien paramount to all other claims and liens upon the revenues and all real and personal property of the discharger, whether or not the discharger is insolvent. All liens under P.L. 1976, c. 141 (C. 58:10-23.11 et seq.) shall be filed with the clerk or register of deeds and mortgages of the county wherein the affected property is located, and with the clerk of the Superior Court, and shall immediately attach to, and become binding upon, all the property, whether real or personal, of the party against whom the lien is filed. If it is believed that the party chargeable under the lien *373 has an interest or estate, whether vested or contingent, in property within the State, but the exact location of the property is not known, then the liens shall be filed with the clerk of the Superior Court and shall become binding upon all the property of the party chargeable under the lien wherever situated within the State. [N.J.S.A. 23:11f(f); emphasis supplied]
The language of this section is clear. It creates a lien which takes priority over any other claim or lien upon the property of a discharger of hazardous waste whether prior in time or not. The statute, therefore, creates a lien with retroactive effect. State Department of Environmental Protection v. Ventron Corp., 94 N.J. 473 (1983); Kessler v. Tarrats, 191 N.J. Super. 273 (Ch.Div. 1983), aff'd 194 N.J. Super. 136 (App.Div. 1984).
Obviously, given this statutory scheme, there is no question that if the State asserts a lien on the property in question, it would take priority over the tax sale certificates held by plaintiff. The problem, however, which is presented is one of timing. The so-called super lien does not come into existence and is not recorded until expenditures are made out of the Spill Compensation Fund. Thus, the question is not whether the lien is a first lien, but whether in circumstances where the lien has not been asserted and is, therefore, not of record, its potential existence gives rise to an action for rescission.
Plaintiff argues that he is entitled to summary judgment because defendants had a duty to disclose and not to misrepresent or conceal the environmental problems on the subject premises and the potential super lien thereon. Since there was no lien of record or clean-up of the property being undertaken at the time of the tax sale which would put a potential purchaser on notice, plaintiff argues that he depended upon full disclosure by defendants, which he claims was not forthcoming.
Seen, not from the clinical viewpoint of an environmentalist but from the coldly practical position of those whose interests involve the status of land titles in New Jersey, this statute, while highly commendable in its intent is, with respect to land titles, a hibernating time bomb. Our whole system of recordation of land titles depends upon the ability of one who *374 seeks to acquire an interest in real property to ascertain beyond peradventure the true state of the title. The entire industry of title insurance depends on this. The willingness of lending institutions to finance the acquisition of real estate depends on it. The financial safety of myriad numbers of owners of real property depends on it. It is probably an understatement that the financial health of a great portion of our economy depends on the simple fact that anyone wishing to invest in real estate, or finance such investment, is able to go to the proper recording officer and be assured of the posture of the title, saving only forgery.[1]See 13A N.J.Practice (Lieberman, Abstracts and Titles), § 1581 at 103.
Into this arena of crystal clarity, the spill act introduces doubt. The statute provides the costs involved shall be a "first priority claim and lien" upon real property involved. N.J.S.A. 58:10-23.11f(f). However, N.J.S.A. 54:9 provides that a municipal tax lien shall "be a first lien" on such land. Faced with such a juxtaposition of a rock and a hard place, the court must herein determine what effect each statute has upon the other.
Even a cursory analysis at once reveals that no simplistic solution can be had. For example, there are obviously many places in New Jersey where any person who inspects property could reasonably expect a potential spill act claim (without casting aspersions, the Kill Van Kull springs to mind) yet other sources of potentially lethal pollution are far from civilization. Prices Pit in Atlantic County is dangerously close to a public water supply and in a seemingly innocuous location. Thus, placing on the potential buyer the duty of a prior inspection is not a monolithic solution.
*375 The only practical rule to follow may, in fact, be no rule at all. It is to hold, and this court does so hold, that the critical issue for determination is whether, under the facts in a given case, a reasonably prudent acquirer of a tax certificate knows or ought to know of the potential existence of a spill act claim. If he knows  or should know  he is entitled to no relief. On the other hand, if there is no lien of record and a reasonable prudent inquirer would have no reason to suspect the same, then this court will rescind the contract and place the parties in statu quo ante. Thus, the excellent reasoning of Judge (later Justice) Pashman in Scult v. Bergen Valley Builders, 76 N.J. Super. 124, 135 (Ch.Div. 1962), aff'd 82 N.J. Super. 378 (App. Div. 1964) comes into play. The court recognizes that this problem will probably only occur in the case of tax title liens and that it may well have a deleterious effect on the salability of such lien. However, both statutes exist and the problem must be left to the Legislature. All the court can do is  in the proper case  to rescind such transaction when necessary.
The court is of the opinion that, if there were no representations of any kind made by defendants, rescission should be granted. Clearly, given the nature of this transaction and the amount of money involved, the potential existence of a super lien constituted a material fact. If neither party were aware of any environmental problems which would give rise to a super lien, then the case is a classic example of mutual mistake.
The general rule concerning mutual mistake is set forth in the case of Beachcomber Coins, Inc. v. Boskett, 166 N.J. Super. 442 (App.Div. 1979) where the court stated:
where parties entering into a transaction that affects their contractual relations are both under a mistake regarding a fact assumed by them as the basis on which they entered into the transaction, it is voidable by either party if enforcement of it would be materially onerous to him than it would have been had the fact been as the parties believed it to be [at 445 (citing Restatement, Contracts, § 502 at 961 (1932)); 13 Williston on Contracts (3 ed. 1970) § 1543 at 64-75].
*376 Plaintiff, however, has presented the court with certain proofs which raise certain questions concerning the procedures of the tax sale. In support of his motion, plaintiff has supplied the court with an affidavit which states that the township solicitor was aware of the environmental problems on the subject premises prior to the date of the tax sale. In light of the allegation in plaintiff's complaint that it represented to plaintiff's agents at the time of the sale that defendants were not aware of any environmental problems associated with the property, a factual issue is presented to the court.
If there were representations made to plaintiff's agents as alleged in the complaint, the court would rescind the tax sale on the basis that plaintiff had the right to rely on such representations. Testimony, however, is necessary to resolve the factual issue as to what kind of representations, if any, were made.
The standard for the granting of summary judgment is well-known. Summary judgment is an extraordinary measure which a court should grant only with extreme caution. Robbins v. Jersey City, 23 N.J. 229, 240 (1957); Ruvolo v. American Cas. Co., 39 N.J. 490, 499 (1963). Our Supreme Court has stated that "sight should never be lost of the fact that such procedure is no substitute for a full plenary trial." United Advertising Corp. v. Metuchen, 35 N.J. 193, 196 (1961).
The burden is on the movant to exclude reasonable doubt as to the existence of a factual issue. Costa v. Josey, 83 N.J. 49, 53 (1980). Plaintiff argues that he has met this burden because defendants have not filed an answer or any answering affidavits. The Court does not agree.
In this instance, defendants elected to pursue their motion to dismiss on the basis of the Tort Claims Act. The court, on a motion for summary judgment, should not penalize a party for electing a particular legal strategy. Further, since the court finds that testimony is necessary to resolve the issue concerning any representations made by defendants, the court finds *377 that summary judgment is inappropriate. Plaintiff's motion is thereby denied.
Defendants, however, are instructed to file and serve responsive pleadings as soon as possible. In addition, given the limited nature of the discovery necessary in this case, the parties are to proceed with discovery on an expedited basis. Upon completion of discovery, this matter will be immediately set down for trial. The crucial issue to be tried will be the question of what plaintiff knew, or should have known, of the true situation at the time of sale.
Finally, plaintiff has moved for costs and counsel fees. The Court finds no basis for such relief and the motion is denied. See R. 4:42-9. No reason for such fees exist. R. 4:42-9 is a guideline, not a gift shop.
Defendants' counsel will submit an appropriate order.
NOTES
[1] And this is not as easy as it used to be. Stretch v. Watson, 5 N.J. 268 (1950), which involved a deed wherein the grantee's name was erased to tissue paper thinness, and another name inserted, could not happen today when instruments are photostated, not copied. The forgery would show up in a deed book because the deed would be photostated.