229 N.J. Super. 475 (1989)
551 A.2d 1046
NICHOLAS TONTODONATI, PLAINTIFF-APPELLANT,
v.
THE CITY OF PATERSON, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 2, 1988.
Decided January 5, 1989.
*477 Before Judges KING, BRODY and ASHBEY.
Seymour M. Karas argued the cause for appellant (Kreiger, Karas, Kilstein, Kopf & Baime, attorneys; Jeffrey R. Youngman, on the brief).
Jessica G. de Koninck, Assistant Corporation Counsel, argued the cause for respondent (Ralph L. DeLuccia, Jr., attorney; Jessica G. de Koninck, on the brief).
The opinion of the court was delivered by ASHBEY, J.A.D.
At issue in this appeal are the damages due an assignee of a municipal tax sale certificate which is invalid as a result of municipal error. In Manor Real Estate & Trust Co. v. City of Linden, 8 N.J. Super. 114, 116-117 (App.Div. 1950), we held that the assignee was not entitled to any refund. We now hold that the assignee is entitled to a refund plus lawful interest under N.J.S.A. 54:5-43.
On December 3, 1982, there being no purchaser at the sale, the tax collector of the city of Paterson (City) sold to the City tax sale certificate # 82-00357 for premises known as 431 River *478 Street, pursuant to N.J.S.A. 54:5-34 and N.J.S.A. 54:5-46. On September 14, 1984, the collector sold to the City tax sale certificate # 84-00123 for premises known as 369 Union Avenue.
On April 28, 1986, the City assigned both the certificates by private sale to plaintiff pursuant to N.J.S.A. 54:5-113. At the time of the assignments, both were invalid. On April 11, 1986, the collector had accepted payment of the taxes due on the 369 Union Avenue property (Certificate # 84-00123), thus invalidating that certificate. On the other hand, the certificate on 431 River Street had been invalid when the premises were sold because taxes had never been in arrears. See N.J.S.A. 54:5-19. These errors were discovered by plaintiff when his counsel conducted the search needed to institute tax sale certificate foreclosure proceedings.
In December 1986, plaintiff filed a "Notice of Claim Under Tort Claims Act" with the City, requesting that the City refund his money, together with interest, fees and costs. The City responded that it would refund the purchase price, but not the interest and expenses, and tendered a check for the purchase price which plaintiff refused. Plaintiff filed this complaint. Both parties moved for summary judgment and by order dated November 2, 1987 the Law Division granted summary judgment in favor of the City and against plaintiff, with costs.[1]
Although plaintiff filed his claim under the Tort Claims Act (Act), he sought contract damages. The City asserted the Act's immunity, and this appeal requires us to examine the relationship between the Tax Sale Law (Law) and the Act. Under the Law, particularly N.J.S.A. 54:5-104.30(f), plaintiff acquired by the assignment a "[t]ax lien title" derived from a tax sale to *479 satisfy a municipal tax lien. The following is an excerpt from the assignment # 84-00123:
"the city ... does hereby grant, bargain, sell, assign, transfer, and set over unto the said party of the second part, her, his or its heirs, successors and assigns, all that certain tax sale certificate(s) bearing No.(s) 84-00123 made by the Collector of Taxes of said City of Paterson to said Nicholas Tontodonati for the sum of $2,184.49.
* * * * * * * *
Together with all right, title, and interest acquired by virtue of said Certificate of Tax Sale and to the premises mentioned and described therein,"[2]
While these words appear to convey title, the purchaser of an invalid tax lien title at either a tax sale or by assignment of the certificate was historically not entitled to redress from the municipality in the event of municipal error, not even a refund of the purchase price. See Tooker v. Roe, 44 N.J.L. 591 (Sup.Ct. 1882). The tenuous nature of the rights created by tax sale certificate assignment is outlined in 3 Williston, Contracts (3 ed. Jaeger 1960), § 445 at 318 n. 13, quoting County Sec., Inc. v. Warwick Properties, Inc., 176 Misc. 272, 24 N.Y.S.2d 971 (Sup.Ct. 1940), aff'd 263 A.D. 964, 33 N.Y.S.2d 825 (1942), mod. 289 N.Y. 774, 46 N.E.2d 844 (1943), where the New York court, citing the Restatement, Contracts, § 175, said:
"It may be asked, how can the rule of implied warranty in an assignment of a chose in action be reconciled with the rule that there is no implied warranty in the transfer of a tax lien. I think the answer must be that in the assignment and transfer of a tax lien, the rule of caveat emptor applies if the assignment was consummated, even though the transfer proves to be utterly worthless, but where the assignment never was consummated, the rule of implied warranty applies. The test would be that in the case of an effective assignment of a worthless lien, the city has, at least, divested itself of all right, title and interest in the lien and could not bring an action to enforce or test the validity of the lien. In the case of a wholly ineffectual assignment of a valid lien, the city has not divested itself of anything and still has complete control and ownership of the lien." [County Sec., Inc. v. Warwick Properties, Inc., 176 Misc. at 275, 24 N.Y.S.2d at 975].
Since 1918, the New Jersey Tax Sale Law has provided for certain refunds when a tax sale is set aside:

*480 If the assessment itself is valid and the tax, assessment or other municipal charge, or any part thereof, is justly due, no sale shall be set aside, except on condition that the amount due shall be paid to the municipality for the use of the holder of the certificate of sale by the person applying to set it aside. If the sale shall be set aside, the municipality shall refund to the purchaser the price paid by him on the sale, with lawful interest, upon his assigning to the municipality the certificate of sale and all his interest in the tax, assessment or other charges and in the municipal lien therefor, and the municipality may readvertise and sell if the municipal lien remains in force. [N.J.S.A. 54:5-43].
Without reference to this statute, this court in Manor Real Estate & Trust Co. v. City of Linden, 8 N.J. Super. at 116-117, held that an assignee of a worthless tax sale certificate was not entitled to any return of his purchase price because a tax sale assignee was subject to "caveat emptor." In 1960, however, the Chancery Division relied upon N.J.S.A. 54:5-43 to return the purchase price with lawful interest to a tax sale purchaser. Pioneer Gun Club v. Bass River Tp., 61 N.J. Super. 104, 106-107, 160 A.2d 183 (Ch.Div. 1960). Pioneer distinguished Manor on the grounds that N.J.S.A. 54:5-43 referred to tax sale purchasers, and Manor concerned assignees of tax sale certificates.
Between Manor and Pioneer, in Dvorkin v. Dover Tp., 29 N.J. 303, 317 (1959), our Supreme Court held that, upon redemption, an assignee, as well as a purchaser at sale, would recover from the municipality, not only the amount which the owner paid to redeem the certificate, but the extra amount (premium) which the assignee had paid to acquire the certificate from the municipality at public sale. The Court relied upon R.S. 54:5-33 (now N.J.S.A. 54:5-33) which authorized premium return to a tax sale purchaser. The Court also relied on other sections of the Law, particularly N.J.S.A. 54:5-114.9, which provided that the assignee of a tax sale certificate at public sale who obtained legal conveyance from the owner would not be entitled to a refund from the municipality, saying that the statute clearly implied that under other circumstances the assignee would be entitled to a refund. Respecting the statutory authority to pay the premium to a purchaser but not to an assignee, the Court said,

*481 It is difficult to discern why the Legislature would intend that a purchaser of the initial tax sale certificate should recoup his premium, and yet, that an assignee of a tax sale certificate held by the municipality (because no one would bid for it in the first instance, R.S. 54:5-34) should forfeit the premium. [Dvorkin v. Dover Tp., 29 N.J. at 317].
In this leading case the majority rejected the dissenting opinion of Justices Jacobs and Francis that plaintiff assignees were speculators, subject to caveat emptor and the continuous legal precedent so holding. Dvorkin v. Dover Tp., 29 N.J. at 322-327.
In the more recent case of Gasorek v. Gruber, 126 N.J. Super. 511, 516 (App.Div. 1974), we held that an assignee under an assignment by a private sale from the municipality was entitled to a refund of additional taxes erroneously paid (not the purchase price) even though the certificate was void because there had been no timely foreclosure. The court rejected the municipality's urging that N.J.S.A. 54:5-114.6 applied to preclude refunds from private sales.
Although the judge in this case ruled in favor of the City, he did not rely upon the Tax Sale Law, but upon the 1972 Tort Claims Act (N.J.S.A. 59:1-1 to 59:12-3). He found the muncipality's conduct in the invalid assignments to be "appropriately ... described as an act of negligence," rather than an act of breach of contract. In so holding, he rejected plaintiff's reliance on N.J.S.A. 59:1-4, which provides that, "[n]othing in this [Tort Claims] act shall affect liability based on contract or the right to obtain relief other than damages against the public entity or one of its employees." See Simon v. Oldmans Tp., 203 N.J. Super. 365, 371 (Ch.Div. 1985); Blazer Corp. v. N.J. Sports & Exposition Authority, 195 N.J. Super. 542, 549 (Law Div. 1984), aff'd 199 N.J. Super. 107 (App.Div. 1985).[3]
The Tort Claims Act is a comprehensive immunity statute. It also contains specific sections respecting municipal immunity for taxing mistakes. N.J.S.A. 59:7-2 provides:

*482 Neither a public entity nor a public employee is liable for an injury caused by:
a. Instituting any judicial or administrative proceeding or action for or incidental to the assessment or collection of a tax.
b. An act or omission in the interpretation or application of any law relating to a tax.
The judge held that N.J.S.A. 59:7-2 conferred immunity for all municipal mistakes related to tax collection, including assignments of invalid tax sale certificates.
N.J.S.A. 59:7-2b has been construed otherwise, however. In McShain v. Township of Evesham, 163 N.J. Super. 522, 529 (Law Div. 1978), the court held that N.J.S.A. 59:7-2b, if pleaded, would not immunize the township from liability for erroneously billing plaintiff for, and accepting payment of, taxes on property plaintiff did not own. The court said, "[h]ere we are not dealing with the interpretation or application of a tax law  we are dealing with a ministerial or clerical mistake, against which the Act does not provide protection to the municipality." McShain v. Township of Evesham, 163 N.J. Super. at 529.
No relevant case has construed N.J.S.A. 59:7-2a. However, giving the words their ordinary meaning, while the assignments could be "actions" in the most literal sense, the words "administrative action" are qualified by the term "instituting," which implies the start of some administrative or judicial process. Cf. Young v. Paterson, 132 N.J. Super. 170, 176 (App.Div. 1975). Moreover, the Attorney General's Task Force on Sovereign Immunity Report which accompanied N.J.S.A. 59:7-1 to -3 reinforces a conclusion that these statutory sections did not intend to confer municipal immunity for any but discretionary mistakes:
This chapter confers immunity upon public employees and public entities for their discretionary acts in the administration of the tax laws. Presumably this activity would be considered discretionary under existing law but it is desirable to make the immunity explicit in order to obviate the need for test litigation. [Comment, following N.J.S.A. 59:7-3 (emphasis added)].
No one contends that the municipal mistakes leading to these improper assignments were anything but clerical. Accordingly, *483 we are compelled to conclude that neither N.J.S.A. 59:7-2a or b applied to confer immunity on the City for assigning its invalid certificates.
We thus agree with plaintiff that the municipality was entitled to no specific Tort Claims Act immunity. The Act also did not confer general immunity for the City's negligence because the Act excepts contract liability, and assignments of tax sale liens are contracts. See 3 Williston, supra, § 445 at 318.
Despite the City's absence of immunity, plaintiff's remedy is limited. The parties agree that plaintiff is entitled to a refund. N.J.S.A. 59:7-3 provides that, "[n]othing in this chapter [Tort Claims Act tax immunity sections] affects any law relating to refund, rebate, exemption, cancellation, amendment or adjustment of taxes." The word "refund" might appear limited to refund of a tax payment, but this is too narrow a reading. In our view "refund" was intended to include any "refund" permitted in the Tax Sale Law. We note that the City never questioned its duty to make a refund, despite the applicable case of Manor Real Estate & Trust Co. v. City of Linden, which did not approve a refund of plaintiff's purchase price. The authority for a refund under the Tax Sale Law is N.J.S.A. 54:5-43. We regard plaintiff's reliance upon Pioneer Gun Club, therefore, as proper. Although N.J.S.A. 54:5-43 appears to concern purchasers of tax sale certificates, not assignees,[4] and the Pioneer court expressly distinguished Manor Real Estate & Trust Co. v. City of Linden on that ground, 61 N.J. Super. at 107, we see no reason to conclude that N.J.S.A. 54:5-43 was not intended to cover plaintiff's claim. If the City is legislatively directed to pay a refund plus interest as a result of its improper sale of a certificate, there is no evidence that the Legislature intended that the City should not pay interest as a result of its improper assignment.
*484 The purpose of the Law is to maximize the municipality's legitimate revenue from all possible sources. Plaintiff provided the City with complete tax collection. Dvorkin v. Dover Tp., 29 N.J. at 312; Gasorek v. Gruber, 127 N.J. Super. at 516. When the municipality twice received the taxes to which it was entitled, it made use of plaintiff's money exactly as it would have if the lien had been sold directly. Distinguishing the municipality's refund duty to plaintiff from its duty to a sale purchaser is not justified. Dvorkin v. Dover Tp., 29 N.J. at 317. Nor do we conclude that Manor ruled otherwise, since that court made no reference to N.J.S.A. 54:5-43 when it reiterated the caveat emptor doctrine. Its ruling lacks precedential value respecting the applicability of N.J.S.A. 54:5-43 to this case.[5]
We reject, however, plaintiff's claim for interest at 18%. Although conceding that "interest payable as damages is not, in the absence of a statute authorizing the same ... generally awarded against governmental entities," plaintiff relies on the terms of the certificate, that a person must pay interest at 18% to the certificate holder in order to redeem. Plaintiff asserts that it was the parties' mutual expectation that plaintiff would receive this 18% interest as "contractual interest." But the City never agreed to pay plaintiff such a sum and plaintiff had no reason to expect that he would obtain a clear 18% on his money.[6] His contention that the City was under a duty to pay such a sum is meritless. Manor Real Estate and Trust Co. v. City of Linden, 8 N.J. Super. at 117. Municipal liens and the rights arising therefrom originate from *485 and are fixed by statute. Dvorkin v. Dover Tp., 29 N.J. at 319. No statute or rule authorizes paying 18% to plaintiff under these circumstances.
Nor is plaintiff entitled to counsel or search fees. R. 4:42-9(a)(5) allows for counsel fees "[i]n an action to foreclose a tax certificate or certificates," but see Simon v. Oldsmans Tp., 203 N.J. Super. at 377 (no basis for counsel fees in action for rescission of the purchase of tax sale certificates and restitution of purchase price). R. 4:42-10 also allows for search fees in actions "for the foreclosure of a mortgage or tax certificate or for the partition and sale of realty," but such is not the case here.
The judgment appealed from is remanded to the trial court to ascertain plaintiff's lawful interest, to be added to his refund, without costs.
NOTES
[1] Costs were not requested. The order omitted reference to the fact that the parties had agreed to the refund of the purchase price. Plaintiff's motion to correct that omission was denied. Nonetheless, defendant refunded to plaintiff the purchase price of $12,190.19.
[2] Except for the reference to the certificate number and the purchase price the language in the assignment of certificate # 82-00357 for $10,005.70 was identical.
[3] Neither party relied on the Contractual Liability Act, N.J.S.A. 59:13-1 to -10, which applies only to contracts with the State.
[4] The rights of assignees are described in N.J.S.A. 54:5-112 to 54:5-129 and there is no comparable section respecting refunds.
[5] See Trainor v. Santana, 86 N.J. 403, 408 (1981), holding that Hill v. Yaskin, 75 N.J. 139 (1977), had no precedential value on the "fireman's rule" because the "fireman's rule" had not been invoked in that case.
[6] See Note, 26 Rutgers L.Rev. 266 (1973), outlining the expenses of tax sale certificate investment then applicable. The tenuous nature of tax sale investment still persists. See Assembly Introductory Statement, No. 1815 to L. 1979, c. 142, which observed that a tax sale certificate operated merely to vest in the purchaser an inchoate interest with the "right to proceed to foreclose the equity of redemption pursuant to the established statutory scheme." New hazards of the investment exist. See Simon v. Oldsmans Tp., 203 N.J. Super. 365 (Ch.Div. 1985), where a purchaser attempted to rescind a tax sale because of the environmental hazard responsibility affecting the property.