NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0643-14T4

RACHEL A. PARSONS, a minor
by her parents and guardians ad
litem, HOWARD PARSONS and
MICHELLE PARSONS, and
HOWARD PARSONS and MICHELLE
PARSONS, individually,

    Plaintiffs-Respondents,

v.

MULLICA TOWNSHIP BOARD OF
EDUCATION and JUDITH M. GRASSO, R.N.,
B.A., C.S.N.,

    Defendants-Appellants,

and

SABAH AMIR, M.D. and
WALTER D. CRANE, D.O.,

    Defendants.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **March 30, 2015** |
| **APPELLATE DIVISION** |

Argued February 23, 2015 — Decided March 30, 2015

Before Judges Simonelli, Guadagno and Leone.

On appeal from the Superior Court of New
Jersey, Law Division, Atlantic County,
Docket No. L-6954-13.

Thomas G. Smith argued the cause for
appellants.

Richard N. Shapiro of the Pennsylvania bar,
admitted pro hac vice, argued the cause for
respondents (Goldenberg, Mackler, Sayegh,

Mintz, Pfeffer, Bonchi & Gill, and Mr. Shapiro, attorneys; Joseph E. Sayegh, on the brief).

The opinion of the court was delivered by

LEONE, J.A.D.

Defendants, the Mullica Township Board of Education (Board) and Judith M. Grasso (collectively "defendants"), appeal the denial of their motion for summary judgment in a suit brought on behalf of then-minor plaintiff Rachel A. Parsons by her parents and guardians ad litem Howard and Michelle Parsons, who also sue on their own behalf. Because defendants are immune under N.J.S.A. 59:6-4, we must reverse and remand.

I.

For purposes of summary judgment only, the parties treat as fact the following allegations by plaintiffs. From the 2001/2002 school year through at least 2004, Rachel was a student at the Mullica Township Elementary School operated by the Board. During that time, Grasso was employed by the Board as a registered nurse (RN) and certified school nurse (CSN). As part of her duties, Grasso conducted a screening test for visual acuity on Rachel. Rachel failed the vision screening in her right eye, but Rachel's parents were not notified of this failure, and Rachel was not referred for further vision testing. Defendants did not provide Rachel's parents with the vision

acuity test results from 2001/2002 until Rachel failed her next school vision screening in May 2004. The delay in notification resulted in a two-year delay in the diagnosis and treatment of Rachel's right eye amblyopia, and proximately caused the loss of sight in Rachel's right eye.[1]

Plaintiffs allege defendants breached their duty to give notice of the test results under N.J.A.C. 6A:16-2.2(k)(6). Plaintiffs filed a complaint in 2013, when Rachel was seventeen, seeking damages for defendants' negligence and breach of duty under the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 59:12-3.[2]

Defendants filed a motion for summary judgment, claiming that they were immune under N.J.S.A. 59:6-4, and that Grasso was also immune under N.J.S.A. 18A:40-4.5. The trial court denied summary judgment by order and memorandum decision on August 22, 2014. We granted defendants' motion for leave to appeal.

---

[1] Amblyopia, also referred to as "lazy eye," "is the medical term used when the vision in one of the eyes is reduced because the eye and the brain are not working together properly. The eye itself looks normal, but it is not being used normally because the brain is favoring the other eye." Nat'l Eye Inst., Amblyopia, https://www.nei.nih.gov/health/amblyopia (last visited Mar. 9, 2015).

[2] Plaintiffs' complaint also included counts against private doctors who treated Rachel before and after 2001 for failing to perform adequate vision screening and to properly diagnose and treat her amblyopia.

## II.

Summary judgment must be granted if the court determines "that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); accord Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Given the parties' agreement to the facts for purposes of the motion for summary judgment, the motion raised only a legal issue of whether defendants have statutory immunity. "Our review of the meaning of a statute is de novo, and we owe no deference to the interpretative conclusions reached by the trial court . . . ." Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 564 (2012). Moreover, "[a] ruling on summary judgment is reviewed de novo. We thus 'apply the same standard governing the trial court,' and do not defer to the trial court's . . . interpretation of 'the meaning of a statute . . . .'" Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014) (citations omitted). We must hew to that standard of review.

## III.

We first address defendants' claim that Grasso is immune under N.J.S.A. 18A:40-4.5. This requires consideration of the statutes and regulations requiring the visual acuity test.

In 1967, the Legislature enacted the current "Education" title. L. 1967, c. 271. In the subtitle governing the conduct of schools, it included a chapter entitled "Health Promotion and Disease Prevention." N.J.S.A. 18A:40. In that chapter, the Legislature included N.J.S.A. 18A:40-4, which provides that a nurse or other health care personnel "shall examine every pupil to learn whether any physical defect exists." "The frequency and procedure of and selection of pupils for examinations shall comply with the rules of the State board." Ibid.

Under the regulations subsequently promulgated by the State Board of Education, "[e]ach district board of education shall ensure that students receive health screenings." N.J.A.C. 6A:16-2.2(k). In particular, "[s]creening for visual acuity shall be conducted biennially for students in kindergarten through grade 10." N.J.A.C. 6A:16-2.2(k)(2). "Screenings shall be conducted by a school physician, school nurse, or other school personnel properly trained." N.J.A.C. 6A:16-2.2(k)(5). "The school district shall notify the parent of any student suspected of deviation from the recommended standard." N.J.A.C. 6A:16-2.2(k)(6).

In 1978, the Legislature passed "AN ACT concerning the examination of pupils for the condition known as scoliosis," the abnormal curvature of the spine (Scoliosis Act). L. 1978, c.

97, §§ 1-3, codified at N.J.S.A. 18A:40-4.3 to -4.5. The Scoliosis Act required biennial examinations for scoliosis by "a school physician, school nurse, physical education instructor or other school personnel." N.J.S.A. 18A:40-4.3; see N.J.A.C. 6A:16-2.2(k)(4). The final section of the Scoliosis Act provided that "[n]o action of any kind in any court of competent jurisdiction shall lie against any physician, school nurse, physical education instructor or other school personnel by virtue of the provisions of this act." L. 1978, c. 97, § 3, codified at N.J.S.A. 18A:40-4.5 (emphasis added).

The natural reading of "this act" in N.J.S.A. 18A:40-4.5 refers to the Scoliosis Act of which it is a part. Nonetheless, defendants argue N.J.S.A. 18A:40-4.5 immunized Grasso for performing an examination under N.J.S.A. 18A:40-4. However, as noted above, N.J.S.A. 18A:40-4 was enacted eleven years earlier, with the entire Education title. Defendants' argument would require us to read N.J.S.A. 18A:40-4.5 as immunizing all "school personnel" from any "action of any kind in any court of competent jurisdiction" for any violation of the entire Education title. We see no indication that the Legislature intended N.J.S.A. 18A:40-4.5 to extend that far, or indeed anywhere beyond the Scoliosis Act itself.

Thus, we agree with the trial court that <u>N.J.S.A.</u> 18A:40-4.5 provides immunity only against actions brought "by virtue of the provisions of" the Scoliosis Act, <u>N.J.S.A.</u> 18A:40-4.3 to -4.5. It does not immunize Grasso for her conduct under <u>N.J.S.A.</u> 18A:40-4 and <u>N.J.A.C.</u> 6A:16-2.2(k)(2) and (6).[3]

## IV.

We next address defendants' claim that they are immune under <u>N.J.S.A.</u> 59:6-4 of the TCA. In 1972, the Legislature adopted the TCA, "which reestablished the rule of immunity for public entities and public employees, with certain limited exceptions." <u>Marcinczyk v. State Police Training Comm'n</u>, 203 <u>N.J.</u> 586, 594-95 (2010); <u>see</u> <u>L.</u> 1972, <u>c.</u> 45. The TCA "declared to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein." <u>N.J.S.A.</u> 59:1-2. "Public entity" includes any "district, public authority, public agency, and any other political subdivision or public body in the State," including the Board here. <u>N.J.S.A.</u> 59:1-3. Under the TCA, "immunity for public entities is the general rule and liability is the exception." <u>Kemp by Wright v. State</u>, 147 <u>N.J.</u> 294, 299 (1997);

---

[3] The legislative history does not reveal why the Legislature included <u>N.J.S.A.</u> 18A:40-4.5 in the Scoliosis Act, given the immunity earlier provided in <u>N.J.S.A.</u> 59:6-4.

accord <u>D.D. v. Univ. of Med. & Dentistry of N.J.</u>, 213 <u>N.J.</u> 130, 134 (2013) (describing that rule as "the 'guiding principle' of the [TCA]").

The Supreme Court in <u>Kemp</u> found that "<u>N.J.S.A.</u> 59:6-4 of the TCA is consistent with that policy," because <u>N.J.S.A.</u> 59:6-4 establishes a "general rule of absolute immunity." <u>Kemp</u>, <u>supra</u>, 147 <u>N.J.</u> at 300. <u>N.J.S.A.</u> 59:6-4 provides:

> Except for an examination or diagnosis for the purpose of treatment, neither a public entity nor a public employee is liable for injury caused by the failure to make a physical or mental examination, or to make an adequate physical or mental examination, of any person for the purpose of determining whether such person has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself or others. For the purposes of this section, "public employee" includes a private physician while actually performing professional services for a public entity as a volunteer without compensation.

The Court stated that "<u>N.J.S.A.</u> 59:6-4 can be divided into two sections." <u>Kemp</u>, <u>supra</u>, 147 <u>N.J.</u> at 300. "The first section provides absolute immunity for the failure to perform an adequate examination 'for the purpose of determining whether [a] person has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself or others.'" <u>Ibid.</u> (quoting <u>N.J.S.A.</u> 59:6-4). "The second section establishes an exception to the general rule of absolute

immunity if the examination is 'for the purpose of treatment.'" Ibid. (quoting N.J.S.A. 59:6-4).

Here, it is undisputed that the health screening of Rachel for visual acuity was not made "for the purpose of treatment." N.J.S.A. 59:6-4. Rather, it was made "for the purpose of determining whether [she had] a disease or physical or mental condition that would constitute a hazard to [her] health or safety." Ibid. N.J.S.A. 59:6-4 "provides absolute immunity" regarding examinations for that purpose. Kemp, supra, 147 N.J. at 300.

Defendants therefore contend they are immune under N.J.S.A. 59:6-4. Plaintiffs offer several arguments why that section should not apply here.

### A.

First, plaintiffs contend that the health screening of Rachel was not "a physical or mental examination." N.J.S.A. 59:6-4. The TCA does not define that phrase, but the legislative history of N.J.S.A. 59:6-4 gives examples illustrating what the phrase includes. The 1972 Report of Attorney General's Task Force on Sovereign Immunity[4] accompanied the draft legislation that was adopted as the TCA. Del Tufo v.

---

[4] The Report is reprinted in Harry A. Margolis & Robert Novack, Claims Against Public Entities at 581-662 (Gann 2015).

A-0643-14T4

Twp. of Old Bridge, 278 N.J. Super. 312, 323 (App. Div. 1995), aff'd, 147 N.J. 90 (1996). The Report included a portion reprinted as the Comment to N.J.S.A. 59:6-4. See Kemp, supra, 147 N.J. at 302. The Comment states that "[t]he immunity granted [by N.J.S.A. 59:6-4] pertains to the failure to perform adequate public health examinations, such as public tuberculosis examinations, physical examinations to determine the qualifications of boxers and other athletes, and eye examinations for vehicle operator applicants." Comment to N.J.S.A. 59:6-4. The Supreme Court in Kemp explained that "[a]lthough the examples listed in the Comment to N.J.S.A. 59:6-4 were not intended to be exclusive, their general descriptions must be construed to embrace only other illustrations that are similar in nature to those enumerated." Kemp, supra, 147 N.J. at 303.

By that measure, visual acuity screenings for students are "public health examinations." Comment to N.J.S.A. 59:6-4. They are similar in nature to "public tuberculosis examinations" and "eye examinations for vehicle operator applicants," ibid., because they are "conducted for diagnostic purposes only" and, "[o]nce the examination . . . is complete, the public entity takes no further action of a medical nature," Kemp, supra, 147 N.J. at 303.

A-0643-14T4

Further, when <u>N.J.S.A.</u> 59:6-4 was amended in 1983,[5] "the statement of the Senate Labor, Industry and Professions Committee which accompanied the amendment noted that the immunity granted by the statute 'pertains to the failure to perform adequate public health examinations, such as tuberculosis, scoliosis, hearing, eye, mental, and other examinations for public health purposes.'" <u>Del Tufo</u>, <u>supra</u>, 278 <u>N.J. Super.</u> at 323; <u>see</u> <u>Kemp</u>, <u>supra</u>, 147 <u>N.J.</u> at 302 (citing <u>Senate Labor, Indus. & Professions Comm. Statement</u>, No. 524, <u>L.</u> 1983, <u>c.</u> 184). Here, the visual acuity screenings were eye examinations for public health purposes.

Such examinations may be performed by a school. Indeed, <u>Kemp</u> involved a high school's pre-vaccination screening examination of students and resulting vaccination for measles. <u>Kemp</u>, <u>supra</u>, 147 <u>N.J.</u> at 297-98. The Supreme Court stated that "[i]f the purpose of the screening examination was to inform [the student] whether she had measles, such an examination would have been similar to testing for tuberculosis or visual fitness to operate a motor vehicle, and would fit perfectly into the group of public health examinations articulated in the Comment."

---

[5] The amendment added the last sentence of <u>N.J.S.A.</u> 59:6-4, which is not implicated here. <u>L.</u> 1983, <u>c.</u> 184, § 1.

<u>Id.</u> at 303.[6]  Here, the purpose of the visual acuity screening was simply to inform Rachel's parents if she had vision problems, and the screening thus "fit perfectly into the group of public health examinations articulated in the Comment." <u>Ibid.</u>

Plaintiffs argue that a visual acuity screening is not a physical examination under <u>N.J.A.C.</u> 6A:16 and the Mullica Township Board of Education's regulations.  However, those regulations by the State Board of Education and by Mullica Township have nothing to do with the TCA.  Those regulations cannot determine, limit, or redefine the Legislature's intent in enacting the TCA in 1972.  They cannot dictate what examinations the Legislature intended to encompass within the immunity granted by <u>N.J.S.A.</u> 59:6-4.[7]

_____

[6] <u>Kemp</u> held immunity did not apply only because the vaccination was treatment, <u>id.</u> at 300-03, and "the pre-vaccination examination was an examination for the purpose of treatment, and therefore falls within the exception to the TCA grant of immunity [in <u>N.J.S.A.</u> 59:6-4]," <u>id.</u> at 304.  "<u>N.J.S.A.</u> 59:6-4's grant of immunity 'does not apply to examinations for the purpose of treatment <u>such as are ordinarily made in doctors' offices and public hospitals</u>,'" like vaccinations.  <u>Id.</u> at 302 (quoting Comment to <u>N.J.S.A.</u> 59:6-4).

[7] Thus, we need not decide whether <u>N.J.A.C.</u> 6A:16-2.2(k)(2)'s requirement for visual acuity screening falls within the definition of "[p]hysical examination" in the regulations of the State Board and Mullica Township's Board.  We note those definitions each include as physical examinations the "specific
(continued)

12                                    A-0643-14T4

Plaintiffs stress that those regulations specify what type of health care professional can perform certain physical examinations, and do not include an RN or CSN such as Grasso. However, immunity does not turn on the type of license possessed by the "public employee" tasked with performing a physical examination. N.J.S.A. 59:6-4. Under the TCA, "'[p]ublic employee' means an employee of a public entity," and "'[e]mployee' includes an officer, employee, or servant, whether or not compensated or part-time, who is authorized to perform any act or service." N.J.S.A. 59:1-3. It is undisputed that Grasso was authorized to perform the visual acuity screenings. N.J.A.C. 6A:16-2.2(k)(5), -2.3(b)(3)(ii).

Accordingly, we hold that the visual acuity screening here was a physical examination under N.J.S.A. 59:6-4.

B.

Plaintiffs also argue that even if N.J.S.A. 59:6-4 immunizes the "screening for visual acuity" required by N.J.A.C. 6A:16-2.2(k)(2) as a physical examination, it does not immunize the failure to "notify the parent of any student suspected of deviation from the recommended standard" under N.J.A.C. 6A:16-2.2(k)(6). They assert their claim addresses only the failure

---

(continued)
procedures required by statute as stated in N.J.A.C. 6A:16-2.2."
E.g., N.J.A.C. 6A:16-1.3.

to give notice of the examination results, and does not claim a "failure to make a physical or mental examination, or to make an adequate physical or mental examination." N.J.S.A. 59:6-4.

In common experience, physical examinations involve a three-step process: arranging to have an examination; conducting the examination; and reporting the results of the examination. The exception plaintiffs seek to carve out of N.J.S.A. 59:6-4 would excise from such examinations their necessary concluding step. This is illustrated by the examples given in the legislative history. "[P]ublic tuberculosis examinations" would be of little use if the examiner kept the results to herself. Comment to N.J.S.A. 59:6-4. "[P]hysical examinations to determine the qualifications of boxers and other athletes, and eye examinations for vehicle operator applicants," are followed by notification to the athletes or applicants of whether they are qualified. Ibid. A physical or mental examination which fails to communicate or inadequately communicates the results is not "an adequate physical or mental examination." N.J.S.A. 59:6-4.

Plaintiffs contend that in the Comment's examples, the examiner presumably directly notifies the person examined, who is an adult or, for driver's license applicants, at least sixteen years old. N.J.A.C. 13:21-7.1. Plaintiffs note that

Rachel was in kindergarten, and that N.J.A.C. 6A:16-2.2(k)(6) requires "[t]he school district shall notify the parent of any student suspected of deviation from the recommended standard." However, the identity of the persons giving and receiving notification under the regulation does not alter the integral role of notification to the adequacy of the examination. Plaintiffs assert that the regulation makes the examination and the notification two separate events, but it does not sever the inexorable connection between making and communicating the diagnosis.

Severing that connection would create an anomaly for the person examined. Under plaintiffs' reading, N.J.S.A. 59:6-4 would immunize the public entity and public employee for the failure to make an examination to detect the hazardous condition, and for the failure to diagnose the hazardous condition in an examination, but leave the public entity and public employee wholly liable for failure to communicate the result of the examination. The interests of the person examined do not justify such a distinction. Each failure would leave them just as ignorant of the hazardous condition. The resulting injury and damages are the same for each failure.

Such an exception also would not serve the goals of N.J.S.A. 59:6-4. Its provision of immunity encourages public

health examinations.  Public entities might not undertake such examinations if the public entities risked exposure to potentially substantial liability.  If school boards could be found liable for the full damages from any hazardous condition they failed to communicate or to communicate adequately, the boards would be reluctant to conduct such public health examinations.  The Legislature and State Board of Education would be similarly reluctant to compel the boards do so.  To encourage public health examinations, N.J.S.A. 59:6-4 was intended to provide "absolute immunity," Kemp, supra, 147 N.J. at 300, not partial immunity that omits one step of a three-step process.

Accordingly, we hold that N.J.S.A. 59:6-4's immunity covering the "failure . . . to make an adequate physical and mental examination" includes the failure to provide adequate notification of the examination results.  It thus covers failure to comply with N.J.A.C. 6A:16-2.2(k)(6)'s requirement that "[t]he school district shall notify the parent of any student suspected of deviation from the recommended standard."

C.

Plaintiffs primarily assert that such notification is a ministerial act, not a discretionary act.  Based on that premise, they conclude the public entity and public employee are

16

liable under N.J.S.A. 59:2-3 and 59:3-2, respectively. The trial court apparently agreed, citing N.J.S.A. 59:3-2 in ruling that the TCA "does not provide immunity for Ms. Grasso's conduct." We accept plaintiffs' premise, but not their conclusion.

"[A] ministerial act is 'one which a person performs in a given state of facts in a prescribed manner in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment upon the propriety of the act being done.'" S.P. v. Newark Police Dep't., 428 N.J. Super. 210, 231 (App. Div. 2012). We agree that notification here was a ministerial rather than a discretionary act. By providing that the school district "shall notify the parent of any student suspected of deviation from the recommended standard," N.J.A.C. 6A:16-2.2(k)(6) gave the school district no discretion.

However, plaintiffs' argument contravenes the structure, language, and intent of the TCA, which allows ministerial acts to be immunized by specific provisions like N.J.S.A. 59:6-4. We first examine the general provisions of the TCA in chapters two and three.

Chapter two of the TCA addresses generally the liability and immunity of public entities. "Except as otherwise provided by this act, a public entity is not liable for an injury,

whether such injury arises out of an act or omission of the public entity or a public employee or any other person." N.J.S.A. 59:2-1(a). The TCA provides that "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." N.J.S.A. 59:2-2(a). However, "[a]ny liability of a public entity established by this act is subject to any immunity of the public entity." N.J.S.A. 59:2-1(b).

Chapter three of the TCA addresses generally the liability and immunity of public employees. "Except as otherwise provided by this act, a public employee is liable for injury caused by this act or omission to the same extent as a private person." N.J.S.A. 59:3-1(a). However, "[t]he liability of a public employee established by this act is subject to any immunity of a public employee provided by law." N.J.S.A. 59:3-1(b).

In chapters two and three, general provisions immunize "[d]iscretionary activities." N.J.S.A. 59:2-3, 59:3-2. Those sections declare that a public entity or a public employee "is not liable for an injury resulting from the exercise of judgment or discretion vested" in the entity or the employee, respectively. N.J.S.A. 59:2-3(a), 59:3-2(a). However, those sections provide that "[n]othing in this section shall exonerate

a public entity [or a public employee] for negligence arising out of acts or omissions . . . in carrying out . . . ministerial functions."  N.J.S.A. 59:2-3(d), 59:3-2(d).  Thus, when no provision of the TCA other than N.J.S.A. 59:2-3 or 59:3-2 could provide immunity, "[t]he standard for liability under the TCA depends on whether the conduct of individuals acting on behalf of the public entity was ministerial or discretionary." Henebema v. S. Jersey Transp. Auth., 219 N.J. 481, 490 (2014).

Importantly, N.J.S.A. 59:2-3(d) and 59:3-2(d) each provide only that "[n]othing in this section" shall immunize ministerial functions.  (Emphasis added.)  Thus, those sections in no way prevent immunity from being granted by other sections of the TCA.  Moreover, chapter two and chapter three both provide that their general allocation of immunity and liability governs "[e]xcept as otherwise provided by this act."  N.J.S.A. 59:2-1(a), 59:3-1(a).  Chapter two and chapter three also provide that any liability of a public entity or a public employee "established by this act is subject to any immunity" of the public entity or public employee provided by law.  N.J.S.A. 59:2-1(b), 59:3-1(b).

Therefore, "[a]lthough a public entity is generally liable for the ordinary negligence of its employees in performance of ministerial duties, that liability yields to a grant of

immunity." Pico v. State, 116 N.J. 55, 62 (1989) (citations omitted); see Rochinsky v. N.J. Dep't of Transp., 110 N.J. 399, 412 (1988). Both this court and the Supreme Court have ruled that "acts of negligence, both discretionary and ministerial, . . . even if not immunized by the general sections conferring entity immunity (sections 2-2 and 2-3), [may] be immunized under the specific provisions" of the TCA. Tice v. Cramer, 133 N.J. 347, 364-65 (1993); see, e.g., Malloy v. State, 76 N.J. 515, 520 (1978); S.P., supra, 428 N.J. Super. at 233. Where a section of the TCA provides absolute immunity, "it immunizes absolutely all negligence of the public entity or the public employee," regardless of "whether the negligence is discretionary or ministerial." Tice, supra, 133 N.J. at 367.

The Supreme Court in Kemp addressed these precepts with respect to N.J.S.A. 59:6-4. The Court noted that "[t]he TCA includes both general provisions concerning immunity and liability, see N.J.S.A. 59:2-3; N.J.S.A. 59:3-2, and specific provisions that govern in particular factual contexts." Kemp, supra, 147 N.J. at 307 (citing N.J.S.A. 59:6-1 to 6-7 ("Medical, Hospital and Public Health Activities")). The Court cited N.J.S.A. 59:6-4 as an example of a specific provision which provides immunity for ministerial acts:

> [W]here the Legislature saw fit to confer
> absolute immunity for ministerial acts, it

also did so in specified contexts.  See N.J.S.A. 59:6-4 (providing absolute immunity in the context of examination for public health purposes).

[Id. at 310.]

The Court thus indicated that the specificity of N.J.S.A. 59:6-4 trumped the generality of N.J.S.A. 59:2-3 and 59:3-2. This view follows the "well-established rule that where two statutes appear to be in conflict, and one is general in nature and the other specific, the conflict is resolved in favor of the more specific statute 'as a more precise manifestation of legislative intent.'"  State v. Gerald, 113 N.J. 40, 83 (1988). Moreover, if a specific immunity provision's "meaning were limited to discretionary governmental acts, the entire provision would be surplusage, as [N.J.S.A. 59:2-3(a)] immunizes a public entity from liability for discretionary activities."  Malloy, supra, 76 N.J. at 520.

Moreover, reading N.J.S.A. 59:6-4 to immunize all aspects of public health examinations, whether discretionary or ministerial, comports with its unqualified plain language. N.J.S.A. 59:6-4 specifically provides absolute immunity for "failure to make a physical or mental examination, or to make an adequate physical or mental examination."  It provides no exception for ministerial acts.

Furthermore, as set forth above, such an interpretation better serves N.J.S.A. 59:6-4's goal to encourage such examinations than would a construction that failed to immunize all three steps of the examination process. Additionally, reading N.J.S.A. 59:6-4 as immunizing only discretionary acts would cause contradictions with its plain language. For example, its language immunizing "the failure to make a physical or mental examination" would dictate immunity, while a ministerial acts exception would call for liability where such an examination is required, as here. N.J.A.C. 6A:16-2.2(k) ("Each district board of education shall ensure that students receive health screenings.").

By contrast, applying N.J.S.A. 59:6-4's plain language providing absolute immunity effectuates the intent of the TCA. "[T]he Legislature intended public entities to receive broad immunity protection under the" TCA, and thus "an immunity provision of the Act will trump an applicable liability provision." Ogborne v. Mercer Cemetery Corp., 197 N.J. 448, 459 (2009); see Tice, supra, 133 N.J. at 355. Courts must "recognize[] the precedence of specific immunity provisions," and ensure "the liability provisions of the Act will not take precedence over specifically granted immunities." Weiss v. N.J. Transit, 128 N.J. 376, 380 (1992). To "rule otherwise would be

to ignore what is probably the clearest and most important command of the [TCA], namely, that the immunities set forth in the [TCA] prevail over any liabilities." Tice, supra, 133 N.J. at 370-71 (citing N.J.S.A. 59:2-1(b) and 59:3-1(b)). "A contrary conclusion could be reached only by ignoring the language of the statute, the holdings of the cases [above], and the basic policy of the Tort Claims Act." Sczyrek v. Cnty. of Essex, 324 N.J. Super. 235, 245 (App. Div. 1999), certif. denied, 163 N.J. 75 (2000).

We recognize certain provisions in the TCA have been held not to grant immunity to ministerial acts. We held N.J.S.A. 59:7-2 does not immunize ministerial acts because the Comment stated that chapter seven "'confers immunity upon public employees and public entities for their discretionary acts in the administration of the tax laws.'" Tontodonati v. City of Paterson, 229 N.J. Super. 475, 482 (App. Div.) (quoting Comment to N.J.S.A. 59:7-3), certif. denied, 117 N.J. 35 (1989). We also have held N.J.S.A. 59:5-4 does not immunize ministerial acts by police officers, because of a similar Comment, and because the section gave no indication it was making a "major change in prior law," which had provided for liability. Suarez v. Dosky, 171 N.J. Super. 1, 8-10 (App. Div. 1979), certif.

<u>denied</u>, 82 <u>N.J.</u> 300 (1980).[8]  Here, no prior law or Comment calls for liability in contravention of the plain language of <u>N.J.S.A.</u> 59:6-4.

Our "conclusion is consistent with California precedents interpreting California's comparable statute[,] <u>Cal. Gov't Code</u> § 855.6 (West 1996)," which in its text and its comment "is virtually identical to <u>N.J.S.A.</u> 59:6-4."  <u>Kemp</u>, <u>supra</u>, 147 <u>N.J.</u> at 304.  "Because our TCA was patterned after the California Tort Claims Act of 1963, reference to California precedents interpreting section 855.6 is appropriate."  <u>Ibid.</u>  Our Court has stressed that "the interpretations of the California statute by its judiciary, both before and after our Legislature's enactment of the Tort Claims Act," are "particularly significant to our interpretation of the [TCA]."  <u>Tice</u>, <u>supra</u>, 133 <u>N.J.</u> at 361-62.

In <u>Creason v. Department of Health Services</u>, 957 <u>P.</u>2d 1323, 1325 (Cal. 1998), the plaintiffs claimed that the public entity violated a "mandatory duty with respect to its development of appropriate testing and reporting procedures" in a program

_____

[8] <u>Cf.</u> <u>Rochinsky</u>, <u>supra</u>, 110 <u>N.J.</u> at 412 (noting that <u>N.J.S.A.</u> 59:5-4 has "been found to cover ministerial as well as discretionary acts," citing <u>Wuethrich v. Delia</u>, 155 <u>N.J. Super.</u> 324 (App. Div.), <u>certif. denied</u>, 77 <u>N.J.</u> 486 (1978)); <u>see</u> <u>Pico</u>, <u>supra</u>, 116 <u>N.J.</u> at 62 (noting that general "liability [for ministerial acts] yields to a grant of immunity" under <u>N.J.S.A.</u> 59:5-4, citing <u>Wuethrich</u>, <u>supra</u>, 155 <u>N.J. Super.</u> at 326).

screening newborns for hereditary disorders. The California Supreme Court held that even if the public entity making a physical examination fails to carry out a mandatory statutory duty which is not immunized by California's general discretionary immunity statute, "section 855.6 provides specific immunity" to non-discretionary acts. Id. at 1331. "If a specific immunity statute applies, it 'cannot be abrogated by a statute which simply imposes a general legal duty or liability[.]'" Ibid.; see also Barner v. Leeds, 13 P.3d 704, 711 (Cal. 2000) (noting that if section 855.6 only immunized acts of discretion also covered by California's general discretionary immunity statute, "the additional immunity set forth in section 855.6 would have been unnecessary"). The Court concluded that immunity was required by the public policy underlying § 855.6 and its comment:

> "To provide the utmost public protection, public entities should not be dissuaded from engaging in such activities by the fear that liability may be imposed if an employee performs his duties inadequately. Far more persons would suffer if government did not perform these functions at all than would be benefited by permitting recovery in those cases where the government is shown to have performed inadequately."
>
> [Creason, supra, 957 P.2d at 1332.]

We are mindful of the serious allegation here that Rachel lost her sight in one eye because of defendants' negligence in

failing to perform a ministerial act. However, as our Supreme Court recently stated in finding immunity from liability for wrongful death, even where the facts "involve a profound tragedy" and "evoke sympathy," the judiciary's focus must be "on the meaning of a statute." Wilson, supra, 209 N.J. at 572, 573, 589. "The Legislature has chosen the means to achieve its policy goals . . . . Our role is complete once we have made clear the meaning of the law enacted by the Legislature." Id. at 589.

We reverse the trial court's order denying summary judgment, and remand for further proceedings consistent with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION