216 N.J. Super. 308 (1987)
523 A.2d 692
RAYMOND KYRIAKOS, M.D. AND NICOLE KYRIAKOS, PLAINTIFFS-RESPONDENTS,
v.
STATE OF NEW JERSEY, DEPARTMENT OF HUMAN SERVICES, MARLBORO PSYCHIATRIC HOSPITAL, DR. C.L. LIN AND DR. S. ERDOGAN, DEFENDANTS-APPELLANTS, AND KEVIN V. CUNICELLA, LUCILLE CUNICELLA, GUARDIAN OF KEVIN V. CUNICELLA, JEANNE C. WEISS AND BETTERWAY RENTALS, INC., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted March 4, 1987.
Decided March 27, 1987.
*309 Before Judges KING, HAVEY and MUIR.
W. Cary Edwards, Attorney General of New Jersey, attorney for appellants (James J. Ciancia, Assistant Attorney General, of counsel; Robin D. Eckel, Deputy Attorney General, on the brief).
Drazin and Warshaw, attorneys for respondents (Thomas J. DiChiara, on the brief).
The opinion of the court was delivered by KING, P.J.A.D.
This appeal requires us to interpret N.J.S.A. 59:6-7(a) which immunizes public employees and entities from liability for injuries caused by escaping mental patients. The statute reads in pertinent part
Escape of person confined; injuries between inmates.
Neither a public entity nor a public employee is liable for:
a. an injury caused by an escaping or escaped person who has been confined for mental illness or drug dependence; [N.J.S.A. 59:6-7(a)].
We conclude that in the circumstance we describe below the Law Division judge erred in not directing a verdict in favor of the public employee and public entity defendants. We reverse the $65,500 verdicts for the plaintiffs and order entry of judgment in favor of these defendants.
This is the factual background. On July 22, 1980 defendant Kevin Cunicella was admitted to Marlboro Psychiatric Hospital, a public institution, pursuant to an order of involuntary commitment from the Scotch Plains Municipal Court which resulted from his mother filing a complaint against him. He was first placed under the care of Dr. Ching Lin and was housed in the Intensive Treatment Unit ("ITU"), a locked ward where all detainer patients were initially placed pursuant to Marlboro policy. Lin also had treated Cunicella on his two earlier admissions *310 to Marlboro which were within 18 months of the July 1980 admission. During both of those prior stays at Marlboro, Cunicella had lived in Cottage Ten, an "open" facility where patients were free to go anywhere on the Marlboro grounds. The only significant restriction placed on patients living in the cottages is that they must report for roll-call at designated times.
On July 29, 1980 at about 4 p.m., after an interview with the Crisis Treatment Team (a group which evaluates a patient's suitability for transfer to an open ward), Cunicella was transferred from ITU to Cottage Ten. Upon transfer, defendant Dr. Erdogan became Cunicella's treating physician.
The following day at about 7 p.m. Cunicella walked out of Cottage Ten after having been denied permission to lie down. He had asked to lie down because his prescribed medication made him feel ill. His decision to leave was based on his intention to see a doctor for better treatment as well as a desire to go home. When Cunicella left the cottage, he noticed a visitor, Jeanne Weiss, with car keys in her hand. Cunicella grabbed the keys and drove off in her car across the Marlboro grounds at a high rate of speed. He passed the gatehouse at the entrance to the grounds and drove down the street and into a cornfield with Marlboro Hospital patrol officers in pursuit. Cunicella got his vehicle back onto the road and continued at a high rate of speed until he hit a bump at an intersection, became airborne and struck plaintiffs' vehicle causing it to skid off the road into a ravine. Immediately after the accident, Cunicella was captured and placed in the Marlboro ITU.
The jury found Cunicella 46% negligent; Marlboro personnel, other than doctors, 9% negligent; Dr. Lin 11% negligent; and Dr. Erdogan 34% negligent. They found that the supervision of Cunicella was negligent but that his treatment was not. The jury awarded $60,500 to Raymond Kyriakos and $5,000 to his wife for her derivative claim.
*311 We conclude that the verdict cannot stand and that judgment for the public employee and public entity defendants should have been granted as a matter of law. R. 4:37-2; R. 4:40-2. The controlling section of our Tort Claims Act states that public entities and employees are immunized from tort liability for "injury caused by an escaping or escaped person who has been confined for mental illness or drug dependence." N.J.S.A. 59:6-7(a). See also, N.J.S.A. 59:6-6(a)(1) and (2) (immunity for terms and conditions of confinement). We reject plaintiffs' contention that Cunicella subjectively was not "escaping" because he was seeking better treatment in lieu of the alleged negligent or wrongful treatment he was receiving, see N.J.S.A. 59:6-5(b) (liability preserved for negligent treatment of patient in a public institution); Camburn v. Marlboro Psychiatric Hospital, 162 N.J. Super. 323, 327 (App.Div. 1978), certif. granted, 79 N.J. 476 (1979), certif. dismissed, 81 N.J. 269 (1979).
We also reject plaintiffs' argument that the alleged negligent supervision of Cunicella in the cottage setting imposes liability. The specific immunity for injuries caused by an escaping patient prevails over such a theory of liability. The statutory language neither brooks exception nor allows room for construction. The language is clear. But even if an alleged conflict in statutory language generates doubt between immunity and liability, immunity must prevail. See Predoti v. Bergen Pines Cty. Hospital, 190 N.J. Super. 344, 347 (App.Div. 1983). The statute itself resolves such a conflict when it states that "any liability of a public entity established by this act is subject to any immunity of the public entity." N.J.S.A. 59:2-1(b). Malloy v. State, 76 N.J. 515, 519 (1978).
As to the reason for immunity, the Attorney General's Task Force Comment to N.J.S.A. 59:6-7 simply states that "[t]his provision is prompted by reasoning similar to that contained in the comment to § 59:5-2 of this act." The latter section provides immunity for injuries caused by paroled, released or escaped prisoners. The comment to subsection 5-2 stresses that these activities are discretionary and should not be the *312 subject of tort liability, that the immunity reflects the judgment that governmental liability "should not be extended beyond normal limits," and recognizes "the practical problems inherent in supervising prisoners." We agree with the expression of Judge Brody in Predoti, 190 N.J. Super. at 347, where he said:
Decisions affecting confinement of the mentally ill are usually highly predictive and though reasonable can lead to a demonstrably bad result. They are made even more difficult because doctors must consider the important social policy of maximizing the personal liberty of those who are mentally ill.
The Legislature has clearly expressed its desire that clinical judgments to house mental patients in the least restrictive environment should not create tort liability.
Reversed; judgment must be entered for the public employee and public entity defendants.