SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

## Rachel A. Parsons v. Mullica Township Board of Education (A-69-14) (075859)

**Argued April 12, 2016 -- Decided August 17, 2016**

**FERNDANDEZ-VINA J., writing for a unanimous Court.**

In this appeal, the Court considers whether public entities and their employees are granted immunity pursuant to the New Jersey Tort Claims Act ("TCA"), N.J.S.A. 59:6-4, for failure to report the results of a preventative public health examination.

Rachel A. Parsons ("Parsons") was a student at the Mullica Township Elementary School from 2001 through 2004. Pursuant to public health initiatives, the school nurse administered visual acuity tests to all students. In the 2001-02 academic year, Parsons failed the test in her right eye, but her parents were not notified. In 2004, Parsons was given a second visual acuity test, which she also failed in her right eye. After the 2004 test, Parsons's parents were notified of the results from the first and second screenings. Parsons was subsequently diagnosed with amblyopia in her right eye.

Nine years later, Parsons and her parents (collectively "plaintiffs") filed a complaint against the Mullica Township Board of Education ("Board of Education") and the school nurse (collectively "defendants"). Plaintiffs alleged that defendants breached their duty of care by failing to timely notify them of the results from the first screening in violation of N.J.A.C. 6A:16-2.2(1)(6), which provides that local school boards must provide certain health screenings to their students. On July 3, 2014, defendants moved for summary judgment. Defendants argued that they were immunized pursuant to the TCA, N.J.S.A. 59:6-4, which provides immunity to public entities and their employees for failing to conduct an adequate physical or mental examination for the purpose of determining whether the examinee has a disease of a physical or mental condition. Defendants asserted that taking a person's medical history, the visual acuity testing itself, and the communication of the test results are encompassed by the definition of a physical examination, and therefore, are afforded immunity under N.J.S.A. 59:6-4. Plaintiffs countered that the failure to communicate the results of the visual acuity test was a separate and distinct act from the examination itself. Therefore, they claimed that the defendants' failure to report the results of the physical examination fell outside the purview of immunity under N.J.S.A. 59:6-4.

The trial court denied defendants' motion for summary judgment, finding that N.J.S.A. 59:6-4 did not immunize the nurse for failing to timely notify Parsons's parents of the results from the first visual acuity test. The trial court also found that the nurse's actions exposed the Board of Education to liability because she was a public employee acting within the scope of her duties at the time of the injury. Defendants were granted leave to file an interlocutory appeal. In a published opinion, the Appellate Division reversed the trial court's denial of summary judgment. 440 N.J. Super. 79 (App. Div. 2015). The panel found that reporting the results of a physical or mental examination was part of the examination itself, and, therefore, defendants were immune from liability. Quoting Kemp by Wright v. State, 147 N.J. 294 (1997), the panel noted that immunity for public entities is the general rule and liability is the exception. The panel observed that physical examinations involve a three-step process: (1) arranging to have an examination; (2) conducting the examination; and (3) reporting the results of the examination. The exceptions plaintiffs sought to carve out of N.J.S.A. 59:6-4 would excise from such examinations their necessary concluding step. According to the panel, severing that connection would create an anomaly for the person examined and would undermine N.J.S.A. 59:6-4's aim of encouraging public health examinations.

This Court granted plaintiffs' motion for leave to appeal. 223 N.J. 285 (2015).

**HELD:** The failure to timely communicate the results of a preventative public health examination falls within the purview of N.J.S.A. 59:6-4. Therefore, defendants are immune from liability under the TCA. The Court further holds that immunizing defendants under N.J.S.A. 59:6-4 does not render meaningless the provisions of N.J.A.C. 6A:16-2.2(1)(6).

1. In 1972, the Legislature enacted the TCA to serve as a comprehensive scheme that seeks to provide compensation to tort victims without unduly interfering with governmental functions and without imposing an excessive burden on taxpayers. Except as otherwise provided by the TCA, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or public employee or any other person. The TCA's immunities are absolute and any ambiguities in their application must be resolved in favor of immunity. (pp. 13-15)

2. In Kemp, supra, the Court held that N.J.S.A. 59:6-4 is consistent with the TCA's overarching principle of extending absolute immunity to public entities. Kemp also held that N.J.S.A. 59:6-4 can be divided into two sections. The first provides absolute immunity for the failure to perform an adequate examination for the purpose of determining whether a person has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself or others. The second section establishes an exception to the general rule of absolute immunity if the examination is for the purpose of treatment. Accordingly, the Court must first determine whether a visual acuity test constitutes a physical examination pursuant to N.J.S.A. 59:6-4. The TCA does not explicitly define a physical examination or its components. Since the legislative intent cannot be derived from the statute's plain language, the Court looks to N.J.S.A. 59:6-4's legislative history. (pp. 15-16)

3. According to the Report of the Attorney General's Task Force on Sovereign Immunity (1972)(the "Task Force Report"), which was submitted to the Legislature with the draft TCA, the immunity granted in N.J.S.A. 59:6-4 pertains to the failure to perform adequate public health examinations, such as public tuberculosis examinations, physical examinations to determine the qualifications of boxers and other athletes, and eye examinations for vehicle operator applicants. The listed examinations were not intended to be exhaustive, but to serve as general descriptions. The statute should be construed to embrace other illustrations that are similar in nature to those enumerated. Accordingly, the Court concludes that a visual acuity test is a physical examination administered to further the public health of students pursuant to N.J.S.A. 59:6-4. (pp. 16-18)

4. As to whether an adequate physical examination includes reporting the results of the examination to the patient or the patient's guardians, the Court observes that the TCA does not expressly define a physical examination or its components. However, according to the American Medical Association, a physical examination includes history-taking, which involves communicating with the patient at various points throughout the examination about her physical or mental condition. An additional component of a physical examination involves the actual testing of a patient. In the context of an eye examination, the Mayo Clinic has defined a complete eye examination to include a series of tests designed to evaluate vision and check for eye diseases. A complete examination includes communicating the results of testing to the patient. Thus, reporting the results of the examination to a patient is an integral component of a complete eye examination. (pp. 18-20).

5. Since an adequate physical examination under N.J.S.A. 59:6-4 includes reporting the results of the examination, it follows that reporting the results of a physical examination falls within the purview of the statute's immunity. Exposing public school boards to liability for failure to adequately communicate the results of a physical examination would have a chilling effect on public entities that administer public health examinations and it would be illogical to provide immunity for an inadequately performed examination, while imposing liability for the failure to report the results of an examination to a patient. For those reasons, the Court holds that defendants are immune from liability pursuant to N.J.S.A. 59:6-4. This holding comports with the Court's prior decision in Reed v. Bojarski, 166 N.J. 89, 91 (2001), in which it held that a complete physical examination includes communication of the test results to the patient. (pp. 20-21)

6. The Court also holds that immunizing defendants under N.J.S.A. 59:6-4 does not render meaningless the provisions of N.J.A.C. 6A:16-2.2(1)(6), which provide that local school boards must provide certain health screenings, including visual acuity tests, to their students. In the event that a screening uncovers a deficiency, the school district shall notify the parent of any student suspected of deviation from the recommended standard. Plaintiffs argue that immunizing defendants under N.J.S.A. 59:6-4 for failing to timely inform Parsons's parents of her 2001-02 visual acuity test results renders meaningless the safeguards of N.J.A.C. 6A:16-2.2(1)(6). As the appellate panel found, regulations by the State Board of Education and by Mullica Township have nothing to do with the TCA. Those regulations cannot determine, limit, or redefine the Legislature's intent in enacting the TCA in 1972. (pp. 22-24)

The judgment of the Appellate Division is **AFFIRMED**.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE FERNANDEZ-VINA's opinion.**

RACHEL A. PARSONS, a minor by
her parents and guardians ad
litem, HOWARD PARSONS and
MICHELLE PARSONS, and HOWARD
PARSONS and MICHELLE PARSONS,
individually,

      Plaintiffs-Appellants,

         v.

MULLICA TOWNSHIP BOARD OF
EDUCATION AND JUDITH M.
GRASSO, R.N., B.A., C.S.N.,

      Defendants-Respondents,

         and

SABAH AMIR, M.D. and WALTER
D. CRANE, D.O.,

      Defendants.

Argued April 12, 2016 – Decided August 17, 2016

On appeal from the Superior Court, Appellate Division, whose opinion is reported at 440 N.J. Super. 79 (App. Div. 2015).

Elliott J. Almanza argued the cause for appellants (Goldenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi & Gill and Richard N. Shapiro, a member of the Pennsylvania bar, attorneys; Joseph E. Sayegh and Mr. Shapiro, on the brief).

Thomas G. Smith argued the cause for respondents.

JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

In this appeal, the Court addresses whether public entities and their employees are granted immunity pursuant to the New Jersey Tort Claims Act ("TCA"), N.J.S.A. 59:6-4, for failure to report the results of a preventative public health examination.

Plaintiff was administered two visual acuity tests over an approximately two-year period by her elementary school's nurse. Plaintiff failed both tests in her right eye, but her parents were not informed of the test results until the completion of the second test. Plaintiff's private doctors subsequently diagnosed her with amblyopia.[1]

Nine years later, plaintiff and her parents (collectively "plaintiffs") filed a complaint against the Mullica Township Board of Education ("Board of Education") and the elementary school's nurse (collectively "defendants"). Plaintiffs alleged that defendants breached their duty of care by failing to timely notify plaintiff's parents of the results from the first screening in violation of N.J.A.C. 6A:16-2.2(l)(6).[2]

---

[1] "Amblyopia is the medical term used when the vision in one of the eyes is reduced because the eye and the brain are not working together properly. The eye itself looks normal, but it is not being used normally because the brain is favoring the other eye. This condition is also sometimes called lazy eye." Nat'l Eye Inst., Amblyopia, https://nei.nih.gov/health/amblyopia.

[2] On October 5, 2015, subsection (k) of N.J.A.C. 6A:16-2.2 was recodified as subsection (l). While lower courts referred to

2

Defendants then moved for summary judgment, claiming immunity pursuant to N.J.S.A. 59:6-4. This provision provides immunity to public entities and their employees for failing to conduct an adequate physical or mental examination for the purpose of determining whether the examinee has a disease or a physical or mental condition. Defendants asserted that taking a person's medical history, the visual acuity testing itself, and the communication of the test results are encompassed by the definition of a "physical examination," and, therefore, are afforded immunity under N.J.S.A. 59:6-4.

Plaintiffs countered that the failure to communicate the results of the visual acuity test was a separate and distinct act from the examination itself. Therefore, they contended that the defendants' failure to report the results of the physical examination fell outside the purview of immunity under N.J.S.A. 59:6-4.

The trial court denied defendants' motion for summary judgment, finding that N.J.S.A. 59:6-4 did not immunize the nurse for failing to timely notify plaintiff's parents of the results from the first visual acuity test. The trial court further concluded that the nurse's actions exposed the Board of Education to liability because she was a public employee acting

the relevant portion of the statute as subsection (k), this Court refers to its current form, subsection (1).

3

within the scope of her duties at the time of the injury. Defendants were granted leave to file an interlocutory appeal.

In a published opinion, the Appellate Division reversed the trial court's denial of summary judgment. Parsons v. Mullica Twp. Bd. of Educ., 440 N.J. Super. 79 (App. Div. 2015). The Appellate Division found that reporting the results of a physical or mental examination was part of the examination itself, and, therefore, defendants were immune from liability under N.J.S.A. 59:6-4.

We now address whether a public entity's failure to timely communicate the results of a preventative public health examination is immunized pursuant to N.J.S.A. 59:6-4. This determination requires an analysis of the components of a physical examination and an exploration of whether the Legislature intended to immunize a public entity for the failure to communicate the results of an examination under the TCA.

For the reasons that follow, we conclude that the failure to timely communicate the results of a preventative public health examination falls within the purview of N.J.S.A. 59:6-4. Therefore, we hold that defendants are immune from liability under the TCA, and affirm the judgment of the Appellate Division.

I.

4

Rachel A. Parsons was a student at the Mullica Township Elementary School from 2001 through approximately 2004. During that time, the school was operated by the Board of Education. Pursuant to public health initiatives, Judith M. Grasso, R.N., C.S.N., the school nurse, administered visual acuity tests to all students.

In the 2001-02 academic year, Parsons failed the test in her right eye. However, her parents were not notified of this deficiency. In 2004, Parsons was given a second visual acuity test, which she also failed in her right eye. After the 2004 test, Parsons's parents were notified of the results from the first and second screenings. Parsons was subsequently diagnosed with amblyopia in her right eye, a condition that went undetected by her private doctors before and after the first screening.[3]

In November 2013, Parsons, then seventeen years old, and her parents filed a complaint against the Board of Education and Grasso. Plaintiffs alleged that defendants breached their duty to timely notify Parsons's parents of the earlier test results pursuant to N.J.A.C. 6A:16-2.2(l)(6).

---

[3] Plaintiffs also filed claims against the private doctors for failing to perform adequate vision screening and to properly diagnose and treat her amblyopia. Those claims are not part of this appeal.

A.

On July 3, 2014, defendants moved for summary judgment. Defendants argued, among other things, that they were immunized pursuant to the TCA, N.J.S.A. 59:6-4, which provides immunity to public entities and public employees for the failure to make adequate physical or mental examinations for the purpose of determining whether the examinee has a disease or a physical or mental condition. Defendants emphasized that the visual acuity test and the communication of the examination's results are integral components of a "physical examination," which is immunized under N.J.S.A. 59:6-4.

In opposition, plaintiffs argued that defendants' failure to disclose the results of the visual acuity test was a separate and distinct act from the physical examination. Plaintiffs maintained that consequently, the failure to report the results of the visual acuity test should not be afforded immunity under N.J.S.A. 59:6-4 because it fell outside of the definition of a "physical examination." Accordingly, plaintiffs contended that the failure to communicate the results should be considered a ministerial act, which is not afforded immunity pursuant to N.J.S.A. 59:3-2. Plaintiff's also argued that Grasso was not immune from liability because N.J.S.A. 18A:40-4.5 applies only to scoliosis screenings.

In August 2014, the trial court denied defendants' motion for summary judgment by order and written opinion.  Viewing the pleadings and available evidence in the light most favorable to plaintiffs, the trial court concluded that defendants were not immunized under the TCA for Grasso's failure to timely disclose the results of the 2001-02 visual acuity test to Parsons's parents.  Specifically, the trial court found that the visual acuity test was "an examination or diagnosis for the purpose of treatment," and, therefore, defendants were not entitled to immunity under N.J.S.A. 59:6-4.  Finally, the trial court found that N.J.S.A. 18A:40-4.5 immunizes school nurses from liability only for scoliosis examinations but not other health screenings.

B.

The Appellate Division granted defendants' motion for leave to appeal and reversed the trial court's denial of summary judgment.  Parsons, supra, 440 N.J. Super. at 82.  The panel held that a visual acuity test constitutes a "physical examination" under N.J.S.A. 59:6-4.  Id. at 89.  The panel reiterated that "immunity for public entities is the general rule and liability is the exception."  Parsons, supra, 440 N.J. Super. at 85 (quoting Kemp by Wright v. State, 147 N.J. 294, 299 (1997)).  Further, the Appellate Division noted that N.J.S.A. 59:6-4's legislative history, and specifically, the Report of the Attorney General's Task Force on Sovereign Immunity (1972)

7

(the "Task Force Report"), was evidence of the Legislature's intent to immunize public entities for failure to perform adequate public health examinations, such as eye examinations for public health purposes. Id. at 87-88.

Second, the panel opined that an "adequate physical examination" under N.J.S.A. 59:6-4 includes reporting the examination's results. Id. at 89-90. The Appellate Division noted, "[i]n common experience, physical examinations involve a three-step process: arranging to have an examination; conducting the examination; and reporting the results of the examination. The exceptions plaintiffs seek to carve out of N.J.S.A. 59:6-4 would excise from such examinations their necessary concluding step." Ibid. The panel held that "[s]evering that connection would create an anomaly for the person examined" and would undermine N.J.S.A. 59:6-4's aim of encouraging public health examinations. Id. at 90-91.

Further, the Appellate Division emphasized that even though "a public entity is generally liable for the ordinary negligence of its employees in [the] performance of ministerial duties, [N.J.S.A. 59:2-3 and N.J.S.A. 59:2-3(d)], that liability yields to a grant of immunity." Id. at 93 (quoting Pico v. State, 116 N.J. 55, 62 (1989) (citing Rochinsky v. N.J. Dep't of Transp., 110 N.J. 399, 412 (1988)). Citing to the Court's holding in Kemp, the Appellate Division concluded that the specific

8

immunity for public health screenings under N.J.S.A. 59:6-4 superseded the general liability for negligent ministerial acts under N.J.S.A. 59:2-3 and 59:3-2. Id. at 94. The panel noted that its view followed the "well-established rule that where two statutes appear to be in conflict, and one is general in nature and the other specific, the conflict is resolved in favor of the more specific statute 'as a more precise manifestation of legislative intent.'" Ibid. (quoting State v. Gerald, 113 N.J. 40, 83 (1988)).

This Court granted plaintiffs' motion for leave to appeal. 223 N.J. 285 (2015).

## II.

### A.

Plaintiffs argue that the Appellate Division "rewrote" N.J.S.A. 59:6-4 and, in doing so, ignored the statute's plain language and the canons of statutory interpretation by creating an unsupported "three-step" definition of "physical examination." Plaintiffs assert that "[a] survey of medical reference dictionaries confirms that . . . the definition of 'physical examination' does not encompass what occurs after the examination is complete, namely, notification or reporting of the results."

Further, plaintiffs maintain that the plain language of N.J.S.A. 59:6-4 grants immunity only for the failure to conduct

9

a physical examination or to execute an adequate examination. Because the statute's language was clear on its face, plaintiffs allege that the Appellate Division improperly considered N.J.S.A. 59:6-4's legislative history and commentary in violation of the canons of statutory interpretation. Plaintiffs also contend that N.J.S.A. 59:6-4's legislative history and commentary do not support the Appellate Division's extension of immunity to defendants.

Plaintiffs also argue that Kemp does not attach "absolute immunity" to a public entity's failure to communicate the results of a physical or mental examination under N.J.S.A. 59:6-4. Instead, plaintiffs contend that Kemp only immunizes a public entity for the failure to perform an adequate physical or mental examination. Plaintiffs claim that the immunity provided by the Appellate Division's three-step test would render the State's medical reporting laws meaningless and allow public health entities to disregard reporting requirements.

Plaintiffs contend that it is not an anomaly to excuse a public entity from liability for failure to conduct an examination or execute an adequate examination, while attaching liability for failure to communicate the results of an examination. Plaintiffs submit that imposing liability on public entities advances public policy because it ensures that

resources are being used efficiently and protects the interests and expectations of the examinee.

Finally, plaintiffs argue that immunizing defendants from liability pursuant to N.J.S.A. 59:6-4 would "render meaningless" the safeguards in N.J.A.C. 6A:16-2.2(l)(6) because there would be no statutory enforcement mechanism to ensure compliance. Paper Mill Playhouse v. Millburn Twp., 95 N.J. 503, 521-22 (1984); Zimmerman v. Bd. of Review, 132 N.J. Super. 316, 322-23 (App. Div. 1975).

B.

Defendants assert that visual acuity tests and communication of the test results are encompassed by N.J.S.A. 59:6-4's definition of a "physical examination," and thus, defendants are immunized from liability. Defendants stress that plaintiffs' argument is flawed because excluding the reporting of an examination's results from the definition of a "physical examination" runs contrary to a patient's common expectation of discussing their results with a medical professional. Further, defendants maintain that visual acuity tests are preventative public health examinations and not examinations that render medical treatment. Therefore, visual acuity tests fall within the purview of immunity under N.J.S.A. 59:6-4 because they promote public health.

11

Defendants argue that this interpretation does not "rewrite" or expand N.J.S.A. 59:6-4. Defendants contend that the Appellate Division properly determined that N.J.S.A. 59:6-4's legislative history, including the Task Force Report, reveals the Legislature's conclusion that the reporting of results is expected as part of a "physical examination," such as a visual acuity screening.

Defendants also maintain that the Appellate Division properly relied on Kemp to impose immunity under N.J.S.A. 59:6-4. Specifically, defendants assert that Kemp, supra, held that "[i]f the purpose of the screening examination was to inform [the student] whether she had measles, such an examination would have been similar to testing for tuberculosis or visual fitness to operate a motor vehicle, and would fit perfectly into the group of public health examinations articulated in the Comment [to N.J.S.A. 59:6-4]." 147 N.J. at 303. Therefore, defendants assert that Kemp held that the Legislature intended for the listed examples in the Comment to N.J.S.A. 59:6-4 to serve as general descriptions and "be construed to embrace only other illustrations that are similar in nature to those enumerated." Ibid. Accordingly, defendants rely on Kemp to support their argument that the visual acuity tests and the disclosure of the test results are encompassed by N.J.S.A. 59:6-4's definition of a "physical examination."

12

Further, defendants assert that N.J.A.C. 6A:16-2.2(l)(6) is a regulation promulgated by the State Department of Education, and, therefore, does not control the interpretation of N.J.S.A. 59:6-4. Defendants also argue that immunizing a public entity or its employees under N.J.S.A. 59:6-4 does not render N.J.A.C. 6A:16-2.2(l)(6) without an enforcement mechanism for ensuring compliance. Specifically, defendants note that the Department of Education possesses separate enforcement mechanisms to ensure compliance with the regulation.

## III.

This Court evaluates plaintiffs' claim by first considering the plain language of the statute in question. State v. Frye, 217 N.J. 566, 575 (2014); State v. Marquez, 202 N.J. 485, 499 (2010). The fundamental objective of statutory interpretation is to identify and promote the Legislature's intent. State v. Gelman, 195 N.J. 475, 482 (2008) (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "In most instances, the best indicator of that intent is the plain language chosen by the Legislature." State v. Gandhi, 201 N.J. 161, 176 (2010) (citing DiProspero, supra, 183 N.J. at 492).

When the statutory language is clear on its face, this Court's interpretive process ceases, and our sole function is to enforce the statute in accordance with its terms. State v. Lenihan, 219 N.J. 251, 262 (2014); Frye, supra, 217 N.J. at 575.

13

In executing this function, this Court reads the Legislature's chosen words "with[in] their context" and gives them "their generally accepted meaning." N.J.S.A. 1:1-1. Courts may not "rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language." O'Connell v. State, 171 N.J. 484, 488 (2002); see also Frye, supra, 217 N.J. at 575.

However, if a statute's plain language is ambiguous or subject to multiple interpretations, this Court "may consider extrinsic evidence including legislative history and committee reports." Marquez, supra, 202 N.J. at 500; Wilson v. City of Jersey City, 209 N.J. 558, 572 (2012).

A.

In reviewing plaintiffs' TCA claim, this Court is guided by the principle that "immunity for public entities [under the TCA] is the general rule and liability is the exception." Kemp, supra, 147 N.J. at 299; see also D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 134 (2013).

In 1972, the Legislature enacted the TCA to serve as "a comprehensive scheme that 'seeks to provide compensation to tort victims without unduly interfering with governmental functions and without imposing an excessive burden on taxpayers.'" Bernstein v. State, 411 N.J. Super. 316, 331 (2010) (quoting Greenway Dev. Co. v. Borough of Paramus, 163 N.J. 546, 552

14

(2000)). "Except as otherwise provided by [the TCA], a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or public employee or any other person." N.J.S.A. 59:2-1(a). The TCA's immunities are absolute and any ambiguities in their application must be resolved in favor of immunity, not liability. See Kyriakos v. N.J. Dep't of Human Servs., 216 N.J. Super. 308, 312 (App. Div.), certif. denied, 108 N.J. 182 (1987); Perona v. Twp. of Mullica, 270 N.J. Super. 19, 30 (App. Div. 1994).

Under the TCA, a "public entity" has been defined to include any "district, public authority, public agency, and any other political subdivision or public body in the State." N.J.S.A. 59:1-3. Similarly, the Legislature defined a "public employee" to encompass any person in the employ of a public entity and "an[y] officer, employee, or servant, whether or not compensated or part-time, who is authorized to perform any act or service" for a public entity. N.J.S.A. 59:1-3.

The statute in question, N.J.S.A. 59:6-4, provides as follows:

> Except for an examination or diagnosis for the purpose of treatment, neither a public entity nor a public employee is liable for injury caused by the failure to make a physical or mental examination, or to make an adequate physical or mental examination, of any person for the purpose of determining whether such person has a disease or physical or mental condition that would constitute a hazard to

15

the health or safety of himself or others. For the purposes of this section, "public employee" includes a private physician while actually performing professional services for a public entity as a volunteer without compensation.

In Kemp, supra, the Court held that N.J.S.A. 59:6-4 is consistent with the TCA's overarching principle of extending absolute immunity to public entities. 147 N.J. at 300. Kemp also held that N.J.S.A. 59:6-4 can be divided into two sections. Ibid. "The first section provides absolute immunity for the failure to perform an adequate examination 'for the purpose of determining whether [a] person has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself or others.'" Ibid. (quoting N.J.S.A. 59:6-4). "The second section establishes an exception to the general rule of absolute immunity if the examination is 'for the purpose of treatment.'" Ibid. (quoting N.J.S.A. 59:6-4).

Accordingly, we must first determine whether a visual acuity test constitutes a "physical examination" pursuant to N.J.S.A. 59:6-4. The TCA does not explicitly define a "physical examination" or its components. Because the legislative intent cannot be derived from the statute's plain language, we turn to N.J.S.A. 59:6-4's legislative history.

The Task Force Report was submitted to the Legislature with the draft TCA. Del Tufo v. Twp. of Old Bridge, 278 N.J. Super.

16

312, 323 (App. Div. 1995), aff'd, 147 N.J. 90 (1996).  The Task

Force Report included the following section that was later

reprinted as a Comment to N.J.S.A. 59:6-4:

> The immunity granted [in this provision] pertains to the failure to perform adequate public health examinations, such as public tuberculosis examinations, physical examinations to determine the qualifications of boxers and other athletes, and eye examinations for vehicle operator applicants. It does not apply to examinations for the purpose of treatment such as are ordinarily made in doctors' offices and public hospitals.
>
> [Comment to N.J.S.A. 59:6-4.]

In 1983, the Comment was amended to specifically provide

immunity for matters "pertain[ing] to the failure to perform

adequate public health examinations, such as tuberculosis,

scoliosis, hearing, eye, mental, and other examinations for

public health purposes."  S. Labor, Indus. & Professions Comm.

Statement to S. No. 524 (1982).  However, as this Court

determined in Kemp, supra, the listed examinations in the

Comment to N.J.S.A. 59:6-4 were not intended to be exhaustive.

147 N.J. at 303.  Instead, Kemp instructed that the listed

examples should serve as general descriptions and the statute

"must be construed to embrace only other illustrations that are

similar in nature to those enumerated."  Ibid.

Therefore, in accordance with our decision in Kemp, we

conclude that a visual acuity test is a "physical examination"

17

administered to further the public health of students pursuant to N.J.S.A. 59:6-4.  According to the Comment to N.J.S.A. 59:6-4, the Legislature immunized public entities for "the failure to perform adequate public health examinations such as public tuberculosis examinations . . . and eye examinations."  Here, the parties do not dispute that the visual acuity tests were designed to promote public health -- specifically, ocular wellness in students.  Further, the visual acuity tests administered to Parsons and her classmates were not conducted "for the purpose of treatment such as are ordinarily made in doctors' offices and public hospitals"; they were merely preventative screenings.

We further conclude that visual acuity tests are similar in nature to "public tuberculosis examinations" and "eye examinations," and thus fit soundly within the definition of "physical examination" under N.J.S.A. 59:6-4.

B.

Next, we must determine whether an "adequate physical examination," pursuant to N.J.S.A. 59:6-4, includes reporting the results of the examination to the patient or the patient's guardians.  The TCA does not expressly define a "physical examination" or its components, so we must turn again to secondary sources to inform our decision.

18

The American Medical Association defines "physical examination" as

> [a] thorough study of a person's state of health.  The physical examination typically follows history-taking, in which a doctor listens to a person's concerns and asks questions.  Examination usually includes inspection, palpation (direct feeling with the hand), percussion (striking parts of the body with short, sharp taps and feeling and listening to subsequent vibrations), and auscultation (listening with a stethoscope).  If a person reports symptoms, the doctor will attempt to determine their cause.  Tests may also be ordered to aid in diagnosis.  One main objective of regular physical examinations, conducted at frequent intervals even when a person is feeling well, is the early detection of disease.
>
> [Am. Med. Ass'n Complete Med. Encyc. 531 (20th ed. 2003).]

Thus, a physical examination includes history-taking, which involves communicating with the patient at various points throughout the examination about her physical or mental condition.

An additional component of a "physical examination" involves the actual testing of a patient.  Testing includes the physical inspection of a patient's body by hand or medical device.  In the specific context of an eye examination, the Mayo Clinic has defined a complete eye examination to include

> a series of tests designed to evaluate your vision and check for eye diseases.  Your eye doctor may use a variety of instruments, shine bright lights directly at your eyes and request

19

that you look through an array of lenses.  Each test during an eye exam evaluates a different aspect of your vision or eye health.

[Mayo Clinic Staff, Overview, Eye Exam, Mayo Clinic, http://www.mayoclinic.org/tests-procedures/eye-exam/home/ovc-20189446. (last visited Aug. 4, 2016).]

Prior to its conclusion, a complete examination includes communicating the results of testing to the patient.  The Mayo Clinic states,

[a]t the end of your eye exam, you and your doctor will discuss the results of all testing, including an assessment of your vision, your risk of eye disease and preventive measures you can take to protect your eyesight.

[Mayo Clinic Staff, Results, Eye Exam, Mayo Clinic, http://www.mayoclinic.org/tests-procedures/eye-exam/details/results/rsc-20189727. (last visited Aug. 4, 2016).]

Thus, it follows that reporting the results of the examination to a patient is an integral component of a complete eye examination.  Further, the communication of the results of an examination to a patient is consistent with the patient's reasonable expectation that a medical professional will explain the diagnosis and any relevant treatment options before leaving the medical center.

We hold that an "adequate physical examination" under N.J.S.A. 59:6-4 includes reporting the results of the examination.  Consequently, reporting the results of a physical

20

examination falls within the purview of N.J.S.A. 59:6-4's immunity. Further, our holding is supported by public policy considerations. Exposing public school boards to full or partial liability for failure to adequately communicate the results of a physical examination would have a chilling effect on public entities that administer public health examinations. Such a result would undermine the overarching purpose of preventative physical examinations -- to foster public health and wellness. Finally, we conclude that it would be illogical to provide immunity for an inadequately performed examination, while imposing liability for the failure to report the results of an examination to a patient. For those reasons, we hold that defendants are immune from liability pursuant to N.J.S.A. 59:6-4.

Our holding today comports with this Court's prior decision in Reed v. Bojarski, 166 N.J. 89, 91 (2001), in which the court observed that a complete physical examination includes communication of the test results to the patient. In Reed, this Court considered whether a medical professional owed a patient a non-delegable duty of care to disclose the results of a pre-employment screening. Ibid. Two healthcare providers administered physical examinations to a construction company's employees, which included chest x-rays. Id. at 91-92. One of the x-rays revealed an abnormality in an employee's chest;

21

however, the medical professionals did not inform him of this discovery. Id. at 92. Six months later, he was diagnosed with terminal cancer and died. Id. at 92-93.

This Court held that "when a person is referred to a physician for a pre-employment physical, a physician-patient relationship is created at least to the extent of the examination, and a duty to perform a professionally reasonable and competent examination exists." Id. at 105. This Court opined that "included within the notion of a reasonable and competent examination is the need to 'take reasonable steps to make information available timely to the examinee of any findings that pose an imminent danger to the examinee's physical or mental well-being.'" Ibid. (quoting Rainer v. Frieman, 294 N.J. Super. 182, 191 (App. Div. 1996)).

C.

We also hold that immunizing defendants under N.J.S.A. 59:6-4 does not "render meaningless" the provisions of N.J.A.C. 6A:16-2.2(1)(6). N.J.A.C. 6A:16-2.2(1) provides that local school boards must provide certain health screenings, including visual acuity tests to their students. "Screenings for vision acuity shall be conducted biennially for students in kindergarten through grade [ten]." N.J.A.C. 6A:16-2.2(l)(2). The "[s]creenings shall be conducted by a school physician, school nurse, or other school personnel properly trained."

22

N.J.A.C. 6A:16-2.2(1)(5).  In the event that a screening uncovers a deficiency, "[t]he school district shall notify the parent of any student suspected of deviation from the recommended standard."  N.J.A.C. 6A:16-2.2(1)(6).

Plaintiffs argue that immunizing defendants under N.J.S.A. 59:6-4 for failing to timely inform Parsons's parents of her 2001-02 visual acuity test results "renders meaningless" the safeguards of N.J.A.C. 6A:16-2.2(1)(6).  Plaintiffs contend that "constructions of statutes and administrative code that render meaningless language in other statutes or code are strongly disfavored."  For support, plaintiffs rely on Paper Mill Playhouse, supra, 95 N.J. 503, and Zimmerman, supra, 132 N.J. Super. 316.

However, Paper Mill Playhouse involved the interpretation of contradictory sections within the same statutory provision or regulation.  Here, by contrast, we are faced with an inconsistency between a statutory provision and its associated administrative regulation, not the interpretation of a statutory provision in conjunction with other related statutory provisions.  In such instances,

> [d]espite the presumptions and weight accorded a duly enacted administrative regulation . . . [it] must often coexist alongside provisions of superior legal effect, namely state statutes.  Statutes, when they deal with a specific issue or matter, are the controlling authority as to the proper disposition of that

23

issue or matter.  Thus, any regulation or rule which contravenes a statute is of no force, and the statute will control.

> [Terry v. Harris, 175 N.J. Super. 482, 496 (App. Div. 1980).]

Further, as the Appellate Division noted:

> [R]egulations by the State Board of Education and by Mullica Township have nothing to do with the TCA.  Those regulations cannot determine, limit, or redefine the Legislature's intent in enacting the TCA in 1972.  They cannot dictate what examinations the Legislature intended to encompass within the immunity granted by N.J.S.A. 59:6-4.7.

> [Parsons, supra, 440 N.J. at 88-89.]

Therefore, we conclude that extending immunity to defendants under N.J.S.A. 59:6-4 does not "render meaningless" N.J.A.C. 6A:16-2.2(1)(6).

## IV.

The judgment of the Appellate Division is affirmed.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE FERNANDEZ-VINA's opinion.

24