**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4140-15T1

ORNELLA RODOLICO and
PASQUALE RODOLICO, her
husband,

    Plaintiffs-Appellants,

v.

TOTOWA BOARD OF EDUCATION,
WASHINGTON PARK SCHOOL,
BOROUGH OF TOTOWA and STATE OF
NEW JERSEY,

    Defendants-Respondents.

_____

Submitted August 22, 2017 — Decided  August 31, 2017

Before Judges Manahan and Gilson.

On appeal from Superior Court of New Jersey,
Law Division, Passaic County, Docket No. L-542-14.

Frederic J. Rossi, attorney for appellants.

Wolff, Helies, Duggan, Spaeth & Lucas, PA,
attorneys for respondents (Peter H. Spaeth,
on the brief).

PER CURIAM

    In this Title 59 action, plaintiffs Ornella and Pasquale

Rodolico (collectively plaintiffs) appeal from an order of summary

judgement in favor of defendants Totowa Board of Education (BOE) and Washington Park School (Washington Park) (collectively defendants).[1] Having reviewed the arguments in light of the record and applicable law, we affirm.[2]

We derive the following facts from the discovery record in the light most favorable to plaintiffs. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). On February 21, 2012, Ornella sustained injuries to her shoulder when she tripped and fell on raised floor tiles in the lobby entrance of Washington Park after picking up her son from the nurse's office. Ornella was transported to Saint Joseph's Hospital where she was diagnosed with and treated for a dislocated shoulder, and then released. The next day, Ornella was examined by an orthopedist. Ornella subsequently underwent surgery.

Following surgery, Ornella completed two rounds of physical therapy. One commenced in June 2012, and continued through the end of that calendar year. The second commenced in late 2014, and

---

[1] We utilize Ornella's first name for ease of reference. In doing so, we intend no disrespect.

[2] Plaintiffs' case information statement notes that summary judgment in favor of the State was entered on August 28, 2014, and a consent order of dismissal was entered as to the Borough of Totowa on December 9, 2015. Plaintiffs have not appealed either order.

continued until February 2015. By letter dated June 11, 2015, plaintiffs' expert, Bryan Massoud, M.D., opined that Ornella's injuries were permanent and were the cause of her decreased functional abilities.

During her deposition, Ornella testified that she was employed full time, worked forty hours, five days a week, and completed chores in her home including: cooking, laundry, and making the bed, although with some discomfort. She acknowledged that she did grocery shopping, and had taken several vacations subsequent to her fall to the Bahamas, the Dominican Republic, Wildwood and Disney World.

Ornella further testified that she has surgical scarring and suffered persistent "dull, throbbing pain" that runs from her right shoulder down her arm. Concerning physical limitations resulting from her injury, Ornella testified that she is unable to lift her arm, she is unable to put her arm behind her back, she is unable to pull or push anything with her right arm, she has lost strength in her arm, and she is unable to hold a purse with that arm. Ornella also testified that she was prescribed an anti-inflammatory cream that she applies once or twice a week along with taking Motrin.

Regarding the accident's occurrence, Ornella stated that she went to the school from work and was wearing pump shoes with a

heel approximately one-and-three-quarters to two-inches high. Ornella also stated that she was walking at a normal rate of speed and had no difficulty walking prior to the fall. Ornella noted that she was looking straight ahead when she felt her left foot adhere to something which she later attributed to elevated floor tiles. Although Ornella previously walked through the school on several occasions, she could not recall whether, on those occasions, she had walked over the location where the incident occurred.

Peter Campilango, the Building and Grounds Supervisor for the BOE, was deposed as to his knowledge of the maintenance and repairs in the school district. Campilango testified he and the maintenance crew would inspect the floors at least weekly to ensure cleanliness and safe conditions. Campilango stated that although he never observed any raised tiles, the maintenance department replaces tiles and re-grouts when necessary. Further, Campilango testified that missing grout or a disparity in tile elevation could result in a fall and he acknowledged that women would come to the school wearing shoes similar to that worn by Ornella.

Beverly Luciano, the school nurse, was deposed. At the time of her deposition, Luciano had been employed by the BOE for approximately twelve years. On the day of the incident, Ornella went to Luciano's office and advised her she had fallen. Luciano

A-4140-15T1

filled out an accident report. Luciano testified that she walked over the area of the accident for several years and never observed any raised tiles or unsmooth areas.

In discovery, plaintiffs produced the expert report of Michael Natoli, a consulting engineer.[3] In reaching his opinion, Natoli relied upon photographs of the area taken by Ornella days after the accident, photographs of the shoes worn by Ornella on the day of her fall, his knowledge of the safety code, various depositions, and other related information. Natoli concluded that, "the prior unmarked tile trip hazard present within the hallway walking surface created extremely hazardous conditions for pedestrians." He also concluded that the "[half-inch] vertical tile edge" was the cause of Ornella's injury. Natoli reported that the zone where Ornella fell violated numerous safety codes and that a disparity suggestive of a repair was present at the location of the fall.

At the conclusion of discovery, defendants filed a motion for summary judgment, which plaintiffs' opposed. Following oral argument, the judge, in an opinion from the bench, granted defendants' motion. The judge, citing N.J.S.A. 59:4-2, held there

---

[3] Defendants' brief posits the judge ruled that Natoli's expert report constituted a net opinion. However, as plaintiffs noted in their reply brief and the record reflects, the judge did not make this ruling.

was no evidence in the record that demonstrated actual or constructive notice to defendants of a dangerous condition, or that any action or inaction on their part was palpably unreasonable. The judge found there had been no complaints regarding the floor prior to Ornella's fall and, even given the alleged height difference in the floor, the condition did not pose a substantial risk of injury.

The judge identified plaintiffs' burden under N.J.S.A. 59:9-2(d), the statute limiting awards for pain and suffering to cases involving objective proof of a permanent loss of a bodily function that is substantial. Applying the proofs adduced in discovery, the judge held there was "no factual basis for a fact[-]finder to conclude that any alleged injury resulted in a substantial loss of bodily function." Relative to Ornella's injury, the judge found that although she had undergone surgery on her right shoulder and underwent physical therapy, she had no medical treatment since her discharge in March 2016.

An order memorializing the judge's oral decision was entered. This appeal followed.

Plaintiffs raise the following arguments on appeal:

### POINT I

THE TRIAL COURT ERRED IN FINDING THAT THERE WERE NO ISSUES OF MATERIAL FACT.

[A.] The Case Law, Including The Unpublished Opinion On Which The Court Primarily Relied, Was Misapplied To These Facts.

## POINT II

THE TRIAL COURT ERRED IN FINDING [THERE] DID NOT EXIST A DANGEROUS CONDITION OF PUBLIC PROPERTY.

A.    The Court Did Not Properly Consider And Apply The Uniform Construction Code To The Facts Presented.

B.    There Is Sufficient Evidence That Actual Or Constructive Notice Of The Dangerous Condition Existed Here And That It Was Palpably Unreasonable To Not Take Remedial Actions Prior To [Ornella's] Fall.

## POINT III

THE TRIAL COURT ERRED IN FINDING THAT [ORNELLA'S] INJURY DID NOT MEET THE THRESHOLD OF N.J.S.A. 39:2-9.2(B).[4]

Plaintiffs further raise the following arguments on appeal in their reply brief; two of which are repetitive and one which we addressed above in a footnote.

---

[4] This appeal involves application of the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. Plaintiffs incorrectly cite to N.J.S.A. 39:2-9.2(b), which relates to reemployment rights of certain Civil Service employees and commissioners of the Department of Motor Vehicles. N.J.S.A. 59:9-2(d) is the correct citation for the TCA "verbal threshold."

THE TRIAL JUDGE DID NOT DETERMINE THAT THE
EXPERT REPORT OF MICHAEL G. NATOLI, P.E.[,]
WAS A NET OPINION.

POINT II

THE TRIAL COURT ERRED IN DETERMINING THAT
[ORNELLA] DID NOT MEET THE STATUTORY
REQUIREMENTS OF N.J.S.A. 59:4-2, ET SEQ.

POINT III

THE TRIAL COURT ERRED IN FINDING THAT
[ORNELLA'S] INJURY DID NOT MEET THE THRESHOLD
OF N.J.S.A. 39:2-9.2(B).[5]

I.

We review de novo the trial court's grant of summary judgment, applying the same standard as the trial court. Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010). Summary judgment is proper if the record evidence shows "there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2; see also Brill, supra, 142 N.J. at 540. All facts must be viewed in a light most favorable to the non-moving party, "keeping in mind '[a]n issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion . . . would require submission of the issue to the

---

[5] Again, the citation should be N.J.S.A. 59:9-2(d).

trier of fact.'" Schiavo v. Marina Dist. Dev. Co., 442 N.J. Super. 346, 366 (App. Div. 2015) (alteration in original) (quoting R. 4:46-2(c)), certif. denied, 224 N.J. 124 (2016). Furthermore, whether a party is entitled to TCA immunity is a question of law, Malik v. Ruttenberg, 398 N.J. Super. 489, 494 (App. Div. 2008), which we review de novo.

Public entity liability in New Jersey under the TCA is limited. Polzo v. County of Essex, 209 N.J. 51, 55 (2012) (Polzo II). In the TCA, the Legislature expressed the balance of interests between injured parties and governmental entities. N.J.S.A. 59:1-2. It declared that the public policy of this State would require public entities to be liable for their negligence only "within the limitations of this act and in accordance with the fair and uniform principles established herein." Ibid.

Generally, a public entity is "immune from tort liability unless there is a specific statutory provision imposing liability." Kahrar v. Borough of Wallington, 171 N.J. 3, 10 (2002). Even if liability exists, "[c]ourts must 'recognize[] the precedence of specific immunity provisions,' and ensure 'the liability provisions of the Act will not take precedence over specifically granted immunities.'" Parsons v. Mullica Twp. Bd. of Educ., 440 N.J. Super. 79, 95 (App. Div. 2015) (second

alteration in original) (quoting <u>Weiss v. N.J. Transit</u>, 128 <u>N.J.</u> 376, 380 (1992)), <u>aff'd</u>, 226 <u>N.J.</u> 297 (2016).

II.

We first address the parties' arguments relative to liability. Plaintiffs argue that defendants had actual or constructive notice of a dangerous condition (the raised tiles), and that defendants' failure to identify and remediate the condition was palpably unreasonable. In response, defendants argue that there is no evidence of a "dangerous condition" and that, even if such a condition existed, there is no evidence they had actual or constructive notice. Further, defendants argue that there is no evidence of palpably unreasonable conduct on their part.

A public entity may be liable if "a negligent or wrongful act or omission" of its employee "create[s] [a] dangerous condition" or, if it had "actual or constructive notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." <u>N.J.S.A.</u> 59:4-2(a) and (b). As the Court has repeatedly stated,

> [I]n order to impose liability on a public entity pursuant to [<u>N.J.S.A.</u> 59:4-2], a plaintiff must establish the existence of a "dangerous condition," that the condition proximately caused the injury, that it "created a reasonably foreseeable risk of the kind of injury which was incurred," that

> either the dangerous condition was caused by a negligent employee or the entity knew about the condition, and that the entity's conduct was "palpably unreasonable."
> [Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 125 (2001) (quoting N.J.S.A. 59:4-2).]

"Th[e]se requirements are accretive; if one or more of the elements is not satisfied, a plaintiff's claim against a public entity alleging that such entity is liable due to the condition of public property must fail." Polzo v. County of Essex, 196 N.J. 569, 585 (2008) (Polzo I).

A dangerous condition "means a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." N.J.S.A. 59:4-1(a). Even if the public entity did not create the dangerous condition, it may remain accountable under the TCA if the entity had actual or constructive notice of the dangerous condition and its failure to protect against the danger is determined to be palpably unreasonable. Polzo II, supra, 209 N.J. at 67. Conversely, liability will not be imposed "upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable." N.J.S.A. 59:4-2.

"Palpably unreasonable" conduct contemplates more than mere negligence. Coyne v. Dep't of Transp., 182 N.J. 481, 493 (2005). Rather, the concept "imposes a steep burden on a plaintiff," and "implies behavior that is patently unacceptable under any given circumstances[,]" as well as behavior from which "it must be manifest and obvious that no prudent person would approve of its course of action or inaction." Ibid. (quoting Kolitch v. Lindedahl, 100 N.J. 485, 493 (1985)).

Whether a property is in a "dangerous condition" is generally a question for the finder of fact. Vincitore, supra, 169 N.J. at 123 (citing Roe v. N.J. Transit Rail Operations, Inc., 317 N.J. Super. 72, 77-78 (App. Div. 1998), certif. denied, 160 N.J. 89 (1999); Daniel v. State, Dep't of Transp., 239 N.J. Super. 563, 573 (App. Div.), certif. denied, 122 N.J. 325 (1990)). Nonetheless, "like any other fact question before a jury, [that determination] is subject to the court's assessment whether it can reasonably be made under the evidence presented" by the plaintiff that the property was in a dangerous condition. Vincitore, supra, 169 N.J. at 124 (alteration in original) (citation omitted).

In Atalese v. Long Beach Township, 365 N.J. Super. 1, 6 (App. Div. 2003), a three-quarter inch pavement differential in a bike lane spanning an entire block was found to be a dangerous condition where a plaintiff fell during a power walk. This court took into

consideration the anticipated uses of the property and held that it was foreseeable that pedestrians would use the bike lane to walk, run, bike, etc. and, thus, the height differential constituted a substantial risk of injury. Ibid.

Providing all favorable inferences to plaintiffs that they established a prima facie showing that the floor's condition was "dangerous," they still must satisfy the statute's notice requirement. As well, they must satisfy the requirement that, upon notice of a dangerous condition, defendants' failure to protect Ornella was palpably unreasonable.

N.J.S.A. 59:4-3 provides:

> a. A public entity shall be deemed to have actual notice of a dangerous condition . . . if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character.
>
> b. A public entity shall be deemed to have constructive notice of a dangerous condition . . . only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.

However, "the mere '[e]xistence of an alleged dangerous condition is not constructive notice of it.'" Polzo I, supra, 196 N.J. at 581 (quoting Sims v. City of Newark, 244 N.J. Super. 32, 42 (Law Div. 1990)). It follows that absent actual or constructive notice,

13                                    A-4140-15T1

the public entity cannot have acted in a palpably unreasonable manner. Maslo v. City of Jersey City, 346 N.J. Super. 346, 350-51 (App. Div. 2002).

In Gaskill v. Active Environmental Technologies, Inc., 360 N.J. Super. 530, 533 (App. Div. 2003), the plaintiff tripped on a one-inch elevated tree grate while walking on a sidewalk. Summary judgment was granted for the defendant township where no evidence that the township had actual or constructive notice of the raised grate was in the record. Id. at 537. This court found that the plaintiff "failed to establish a prima facie case that the inaction by the township in repairing the grate, removing the tree or taking other steps to rectify the allegedly dangerous condition prior to the incident was palpably unreasonable." Ibid.

Similarly, in Maslo, supra, 346 N.J. Super. at 350-51, we affirmed the grant of summary judgment noting that absent actual or constructive notice, the conduct of the public entity could not be found to be palpably unreasonable. We found there was no factual issue as to constructive notice despite the plaintiff's expert's opinion that the "observable difference in the height of two sections of the sidewalk . . . would have been noticeable for a year or more" given no proof was submitted to any city agency. Id. at 349. Moreover, this court noted even the plaintiff, "a

resident of the neighborhood, said she was unaware of the condition of the sidewalk." Ibid.

As in Gaskill and Maslo, the discovery record here is devoid of any evidence that the maintenance department or any employees had notice, whether in the form of complaints of the alleged dangerous condition or records of prior accidents occurring at the site. As such, plaintiffs have not met their burden that defendants' failure to discover and remediate the condition was palpably unreasonable.

## III.

Despite our determination that plaintiffs failed to establish defendants' liability, in the event of further review, we address plaintiffs' argument that the injury Ornella suffered constituted a permanent loss of bodily function. As evidence of the permanency, Ornella references the surgeries, her limited range of motion, her difficulty in performing household chores, her physical therapy, her need for prescription anti-inflammatory cream, and Massoud's report.

N.J.S.A. 59:9-2(d), commonly referred to as the "verbal threshold" of the TCA, provides:

> No damages shall be awarded against a public
> entity or public employee for pain and
> suffering resulting from any injury; provided,
> however, that this limitation on the recovery
> of damages for pain and suffering shall not

apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of [$3600].

[N.J.S.A. 59:9-2(d).]

The verbal threshold is not a grant of immunity; it is a limitation on recoverable damages when the public employee or entity is not immune. See Gilhooley v. Cty. of Union, 164 N.J. 533, 538 (2000) ("Even where liability is present, the [TCA] sets forth limitations on recovery. One is the limitation on the recovery of pain and suffering damages [in N.J.S.A. 59:9-2(d)].") To vault the threshold, a plaintiff "must show '(1) an objective permanent injury, and (2) a permanent loss of a bodily function that is substantial.'" Knowles v. Mantua Twp. Soccer Ass'n, 176 N.J. 324, 329 (2003) (quoting Gilhooley, supra, 164 N.J. at 540-41). Whether a party has met this second prong requires "a fact-sensitive analysis." Id. at 331. A trial court must consider whether the facts and circumstances place a plaintiff's injuries on "that part of the 'continuum of cases' in which [our] Court has determined that an injury is substantial and permanent." Ibid. (quoting Gilhooley, supra, 164 N.J. at 541).

We need not address whether Ornella suffered a permanent injury as a result of the incident because, even if she did, we

are convinced that she failed to demonstrate a "permanent loss of a bodily function that is substantial."

Certain injuries categorically satisfy the "permanent loss" requirement - "injuries causing blindness, disabling tremors, paralysis and loss of taste and smell." Gilhooley, supra, 164 N.J. at 541. These injuries inherently "implicate the substantial loss of a bodily function (e.g., sight, smell, taste, and muscle control)." Ibid. A substantial loss does not mean that a plaintiff must demonstrate a "total permanent loss of use." Brooks v. Odom, 150 N.J. 395, 406 (1997). Furthermore, "neither an absence of pain nor a plaintiff's ability to resume some of his or her normal activities is dispositive of whether he or she is entitled to pain and suffering damages under the TCA." Knowles, supra, 176 N.J. at 332.

In Kahrar, supra, 171 N.J. at 6, a plaintiff suffered a "massive tear of [her] rotator cuff." The resulting surgery left her with a permanently shortened tendon and forty-percent decreased range of motion in her shoulder. Id. at 6-8. The Court held this was a "substantial loss of a bodily function" as the reduced range of motion "significantly impaired" her "ability to use her arm to complete normal tasks." Id. at 16. In Gilhooley, supra, 164 N.J. at 541-42, the plaintiff suffered a fractured patella that required insertion of "permanent pins and wires to

A-4140-15T1

re-establish its integrity." Although the plaintiff had returned to work, she suffered a "substantial loss" because her knee "could not function" without the pins and wires. Id. at 542. Summarizing Kahrar and Gilhooley, the Court in Knowles noted that both plaintiffs "presented objective medical evidence linking an injured body part to the plaintiff's inability, without extensive medical intervention, to perform certain bodily functions." Knowles, supra, 176 N.J. at 332-33.

At the other end of the "continuum" are cases in which an injured party is merely "unable to perform certain tasks without pain." Id. at 333. In Brooks, the plaintiff did not show substantial loss where she "experience[d] pain" as a result of soft tissue injuries in her neck and back, but she could still "function both in her employment and as a homemaker." Brooks, supra, 150 N.J. at 399, 406. As the Knowles Court summarized, the Brooks defendant prevailed "because the plaintiff's daily activities, although painful, were not substantially precluded by her injuries." Knowles, supra, 176 N.J. at 333.

Similarly, in Ponte v. Overeem, 171 N.J. 46, 51-54 (2002), the plaintiff did not demonstrate substantial loss where his knee injury temporarily hindered his ability to exercise and do housework, but the record did not establish he was permanently "restricted because of his knee" in performing daily activities.

18

See also Newsham v. Cumberland Reg'l High Sch., 351 N.J. Super. 186, 195 (App. Div. 2002) (concluding there was no substantial loss where a vertebra fracture caused only "minor" limitations on plaintiff's ability to perform daily activities).

Applying these principles, plaintiffs cannot satisfy the threshold because Ornella has not suffered a "substantial loss" of use of her arm. Ornella testified that the activities impaired by the injury to her arm are: loss of strength, an inability to push or pull with the arm, and loss of range of motion. Ornella further testified that she works full time, completes household chores with discomfort, and takes destination vacations, both domestic and foreign. Being unable to perform certain tasks without pain does not suffice to meet the threshold. Knowles, supra, 176 N.J. at 333.

Moreover, Ornella's own testimony distinguishes this case from Kahrar. Although both she and Kahrar each suffered a shoulder injury that reduced their range of motion, Kahrar's injury "significantly impaired" her ability to complete normal tasks. Kahrar, supra, 171 N.J. at 16. Here, Ornella admits her ability to carry out daily tasks is unchanged. While Ornella's injury has undoubtedly caused her discomfort and made enjoying some activities more difficult, there is no genuine dispute that she is still able to carry out her daily activities. Accordingly,

19

Ornella has not suffered a "substantial loss" of use of a bodily function.

### IV.

Finally, plaintiffs argue that the judge violated <u>Rule</u> 1:36-3 by relying on unpublished opinions in his decision. The use and authority of unpublished opinions is governed by <u>Rule</u> 1:36-3, which provides that "[n]o unpublished opinion shall constitute precedent or be binding upon any court" and that, "except to the extent required by res judicata, collateral estoppel, the single controversy doctrine or any other similar principle of law, no unpublished opinion shall be cited by any court."

"It is well settled that a trial court's order or judgment may be affirmed for reasons other than those expressed by the judge." <u>Price v. N.J. Mfrs. Ins. Co.</u>, 368 <u>N.J. Super.</u> 356, 359 n.1 (App. Div. 2004) (citing <u>Ellison v. Evergreen Cemetery</u>, 266 <u>N.J. Super.</u> 74, 78 (App. Div. 1993)), <u>aff'd</u>, 182 <u>N.J.</u> 519 (2005). "[I]f the order of the lower tribunal is valid, the fact that it was predicated upon an incorrect basis will not stand in the way of affirmance." <u>Isko v. Planning Bd. of Livingston</u>, 51 <u>N.J.</u> 162, 175 (1968).

Suffice it to state, despite the judge's reference to unpublished opinions, we are satisfied he relied upon those opinions for their reasoning, rather than for precedent. We are

20

further satisfied that the judge's decision granting summary judgment was also premised upon controlling statutory and precedential case law. As such, we discern no error.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21